Crawford v. Ahrnes.

CRAWFORD v. AHRNES, *Appellant.*

DIVISION TWO.

1. **Ejectment:** ADVERSE POSSESSION : EVIDENCE. In ejectment growing out of a disputed division line, a contract relating to said line executed by the adjoining owners and statements of one of them as to the contract are admissible in evidence on the question of adverse possession.

2. ————: ADVERSE POSSESSION. Possession adverse to the true owner for at least ten years is necessary to confer title by limitation.

3. ————: ————. Possession of real estate may be open and notorious and still not be adverse.

4. ————: DIVISION LINE : MISTAKE AS TO TRUE LINE : ADVERSE POSSESSION. The possession of two coterminous proprietors under mistake or ignorance of the true line dividing their premises and without intending to claim beyond the true line will not, when discovered, work a disseizin in favor of either.

5. ————: DESCRIPTION OF LAND IN VERDICT. A finding for plaintiff in ejectment is sufficiently definite, if the officer, when executing his writ of possession, can determine what land to deliver to plaintiff.

6. ————. A defendant in ejectment cannot complain of a judgment for plaintiff for less land than he is entitled to.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*W. W. Fry* for appellant.

(1) All evidence as to the alleged contract was incompetent. (2) Ten years' consecutive adverse possession under claim of title gives the title to the occupant as effectually as any written conveyance. *Allen v. Mansfield*, 82 Mo. 688. (3) The defendant's first

instruction was improperly refused. The land to the defendant's present fence was adversely held from 1865. The fact that Haskell moved the fence north in 1877, which was returned to its original position in 1880, did not affect the strip in controversy, for that strip was never abandoned, never disclaimed, never ceased to be used and occupied from 1865. The fence was not the only *indicia* of adverse possession; where the fence now is were government stones, the north and south hedge planted in 1865 ended there, the neighborhood regarded it as the true line, actual possession of the same from 1865 was had, and the fence maintained there from said date, excepting the three years when moved further north by Haskell. Moving the fence did not change the character of the actual possession of the land in controversy, but only of the Haskell strip north, never claimed by defendant. *Leeper v. Baker*, 68 Mo. 405–407; *Draper v. Shoot*, 25 Mo. 203. ( 4 ) Defendant's second instruction should have been given. The ten years' adverse possession need not be the ten years next before the date of the action of eject-ment. The possession by defendant's grantors from 1865 to 1877 perfected the title. *Allen v. Mansfield*, 82 Mo. 693. ( 5 ) The trial court held that although defendant's grantors were in actual possession of the land he must further show by their declarations with what intention they held it and refused defendant's third instruction. It was sufficient to show they were in actual possession, maintaining a fence and claiming it by their acts without proving their intentions by their declarations. To prove intentions, other than by acts, would in most cases be impossible. If the possession is by mistake, actual possession works disseizin. *Wal-brunn v. Ballue*, 68 Mo. 164; *Cole v. Parker*, 70 Mo. 378 ; *McArmich v. Smith*, 19 Mo. App. 240 ; *Handlan v. McManus*, 100 Mo. 124. "To prevent the operation of the statute a parol acknowledgment of the adverse title by the person in possession must be such as to

show that he intends to hold no longer under a claim of right." Angell on Lim. 388. It would be a violent presumption to conclude they did not hold, claiming title. If they did not claim the land it was for plaintiff to prove that fact, not for defendant to disprove it. Actual possession and use was sufficient proof of claim of ownership. It might have been proper to have left it to the court, sitting as a jury, to determine from the evidence, whether defendant's grantors occupied the land claiming it as their own, but it was not proper to declare as a matter of law that this could not be found from their acts and conduct as asked in defendant's instructions. *Walbrunn v. Ballue*, 68 Mo. 164; *Cole v. Parker*, 70 Mo. 379. (6) The verdict is not supported by the evidence and is uncertain. The evidence was that defendant had three or four acres of the land inclosed, while the judgment is for "a strip of land off of the south end, of about five acres." A judgment for more land than entitled to will be reversed. *Mourning v. Coal Co.*, 99 Mo. 322.

*G. B. Macfarlane* for respondent.

(1) The agreement read in evidence fixed the division line between the parties. *Turner v. Baker*, 64 Mo. 236; s. c., 76 Mo. 344; *Schad v. Sharp*, 95 Mo. 574. (2) There is no evidence that defendant or any of his grantors ever intended to claim except to the true line between them, and there was no adverse possession shown. *Houx v. Batteen*, 68 Mo. 84; *Huckshorn v. Hartwig*, 81 Mo. 648; *Wilson v. Lerche*, 90 Mo. 473. (3) The presumption was that defendant only intended to hold to the true line. The burden was on him to show that his possession was adverse. *Hamilton v. West*, 63 Mo. 93; *Tamm v. Kellogg*, 49 Mo. 118.

THOMAS, J.—Plaintiff's petition in this case contains two counts, one for the specific performance of a

contract and the other an ordinary count in ejectment. At the trial the court dismissed the count for specific performance, and rendered judgment for the possession of the land as described.

Plaintiff and defendant owned adjacent tracts of land. Plaintiff's deed called for "eighty acres, north end, west one-half, section 30, containing eighty acres, more or less." Defendant's deed called for one hundred and five acres, south end, west one-half, section 30. The west one-half, section 30, contained one hundred and eighty seven and ninety-seven-hundredths acres, or about three acres more than the quantity called for by the deeds. Plaintiff's land was unfenced until the spring of 1886. Defendant's land had been fenced and culti- ated fifteen or twenty years. The north fence, inclosing defendant's land, had at one time taken into his inclos- ure about ten acres of the plaintiff's land. Defendant became the owner of his one hundred and five acres in 1880. He then moved his north fence back to the line it had formerly been on. In March, 1886, plaintiff fenced his land, and in order to ascertain the division line had the land surveyed. Defendant was present, saw the lines run and stakes set, and made no objection. The line as established was south of defendant's fence thirty or forty yards.

The government notes of this land called for one hundred and eighty-two and sixty-two-hundredths acres, but the actual survey showed one hundred and eighty- seven and ninety-seven-hundredths acres. After the survey was made, the question arose about building a division fence on the line. Thereupon the parties exe- cuted a contract as follows:

"Article of agreement made and entered into this twenty-ninth day of March, 1886, between Henry Ahrnes, of the county of Audrain and state of Missouri, and Dr. Alex. Crawford, of Bardstown, Kentucky, wit- nesseth, that the said Crawford promises to permit the said Ahrnes to use all of said Crawford's land which

the said Ahrnes has now inclosed until the first day of March, 1887, and the said Ahrnes promises to allow the said Crawford to use the north line of fence owned by Ahrnes, but found to be on said Crawford's land, when the same was surveyed. The said Crawford agrees to give said Ahrnes the use of the said land which Ahrnes has inclosed for the use of said Ahrnes' fence until the first day of March, 1887.

"It is agreed and understood that the use of the fence offsets the use of the land mentioned. If the above-mentioned fence is not moved on the line between the said parties by the first of March, 1887, this contract shall hold good until the fence shall be put on the said line ; each of the above parties paying half of the costs of the same.

"Signed this twenty-nin th day of March, 1886.

"[ Seal ]                          ALEX. CRAWFORD.
"[ Seal ]                          HENRY AHRNES."

Henry Ahrnes, the defendant, testified that he could not read or write English ; that he bought his farm in 1880 and at that time the fence on the north end was about eight acres north, and he then moved it back where it now is, on the same line where he was informed it was first built, twenty-four years ago. He found two rocks there and put the fence where the old fence stood. Since he owned the land he had worked it and claimed it all the time up to the fence on the north side, where it now is. He did not know of plaintiff's survey until that morning when they came and wanted him to carry the chain. He told them he did not have time and they told him he had to go, so he went.

The case was tried by the court. At the instance of plaintiff the court declared the law as follows: "If the court sitting as a jury believes from the evidence in the case that plaintiff at the comm encement of this suit owned the north part and the defendant the south part of the west half of section thirty ( 30 ), township fifty-one ( 51 ), range six ( 6 ), and that the line separating the

two tracts was not known to them or their grantors, and each and their grantors only claimed to the true line, and the fence separating the two tracts was north of the true line, and included within defendant's inclosure a part of plaintiff's land, then the verdict must be for the plaintiff, though the fence may have been at the same place or near thereto continuously for more than ten years next before the commencement of this suit; and though the land within defendant's inclosure may have been cultivated by defendant and those under whom he claims continuously during that time."

The defendant asked the following declarations of law which were refused: "1. If the defendant and his grantors for ten successive years immediately prior to the institution of this suit maintained a fence around the land in question and occupied, used and cultivated it during said ten years, and plaintiff had knowledge of the same being fenced, occupied and used during said time, then said occupancy and use was such open, adverse and continuous possession as gave defendant title and the verdict must be for the defendant.

"2. If the land in question was fenced seventeen years ago, and in 1877 the fence was moved further north by one Haskell, and when the land was purchased by defendant in 1880, the fence was moved back south where it now is, and has since been maintained and kept up by defendant, and that during said seventeen years the land in question has been kept fenced, and has been occupied and used by defendant and his grantors openly and with knowledge of the plaintiff, then such adverse possession is made out as entitles defendant to a verdict.

"3. If the court finds from the evidence that the defendant and his grantors have, for ten years next prior to the institution of this suit, maintained a fence inclosing the land in dispute, and that they have actually occupied and openly cultivated or used said land continuously during said ten years, then the verdict

must be for the defendant, and defendant was not required to show with what intention ( whether adversely or otherwise ) his grantors occupied, held and used said land, other than they openly maintained a fence around the land actually occupied, cultivated and used the same."

I.  The first contention of the defendant is, that the contract and the conversation in regard to it were incompetent.  We hold that they were competent.  The contract and the statements of defendant at, prior to and after its execution were admissible in evidence, to show the character of his possession of the disputed strip of land — that is, to show whether his possession was, in a legal sense, adverse to plaintiff or not.

II.  There is no complaint against the law as declared by the court at the instance of plaintiff. Indeed, there could not be, for it is supported by the authorities in this state.  *Schad v. Sharp*, 95 Mo. 578 ; *Jacobs v. Moseley*, 91 Mo. 462.

III.  It is insisted by defendant that the court erred in refusing the declarations of law prayed for by him. We do not concur in this view.  By the first, the court was asked to declare as a proposition of law, that, if defendant and his grantors for ten successive years prior to the institution of this suit maintained a fence around the land in question and occupied it, and plaintiff had knowledge of these facts, then said occupancy was such open, adverse and continuous possession as gave defendant the title.  This is not the law.  To give a party title to real estate by limitation, his possession must be *adverse* to the true owner for ten years at least.  The only question of fact that the court, sitting as a jury, had to try in this case, was whether defendant's possession of the disputed territory was adverse and had been adverse to plaintiff, and this instruction assumed that an open possession, known to plaintiff, was a possession adverse to him.  It should have been left to the trier of the fact, whether the possession was adverse, as well as

open, notorious and continuous for ten consecutive years. Possession of real estate may be open and notorious and still not be adverse. *Thomas v. Babb*, 45 Mo. 384.

The possession of two coterminous proprietors under mistake or ignorance of the true line dividing their premises, and without intending to claim beyond the true line when discovered, will not work a disseizin in favor of either. *Schad v. Sharp*, *supra*, and cases cited. This declaration then ought not to have been given, for it *assumed* the only fact in the case that was not virtually admitted.

These remarks will apply to the second declaration asked. The assumption of the fact of defendant's possession being adverse, however, is more pointed in the second than the first. And the third is still more objectionable, as it predicates defendant's right to recover upon his open and continuous possession for ten years, without regard to whether such possession was adverse or not. The authorities above show that this is not the law. The court having found the facts set out in the declaration of law given, the plaintiff was entitled to judgment.

IV. Defendant contends that the court rendered judgment for more land than he had in possession belonging to plaintiff, as shown by the evidence. The court found, "that on the first day of March, 1887, plaintiff was and still is entitled to the possession of eighty acres, the north part of the west half of section 30, township 51, range 6, west, in Audrain county; and that defendant on said day entered into such premises and unlawfully withheld from the plaintiff the possession of the strip of land off the south end thereof, of *about five acres*," and rendered judgment for the possession of the *eighty acres*, saying nothing about the five acres. The contention is that the finding, that defendant was in possession of *about five acres*, when the evidence showed that it was not more than three or four, was

erroneous. There is no error in this. The eighty acres can be ascertained very easily, so the officer, when he comes to execute the writ of possession, can know what land to deliver to the plaintiff. Indeed, plaintiff did not get judgment for as much land as he was clearly entitled to. The evidence shows that the plaintiff held a deed to eighty acres, and the defendant a deed to one hundred and five acres, of this tract, making one hundred and eighty-five in all; but when the land was surveyed it appeared that there were one hundred and eighty-seven and ninety-seven-hundredths acres, being two and ninety-seven-hundredths acres more than was contained in both deeds. This excess should have been divided between them in the proportion of one hundred and five to eighty, giving defendant one and sixty-eight-hundredths acres and the plaintiff one and twenty-eight-hundredths acres of this excess. This would have increased the plaintiff's tract to eighty-one and twenty-eight-hundredths acres and the defendant's to one hundred and six and sixty-eight-hundredths acres. The defendant, however, has no right to complain of the action of the court in giving judgment for plaintiff for less than he was entitled to.

V. It was not necessary for the court to find the *exact* amount of plaintiff's land that defendant occupied. All that was required was that defendant was in possession of some part of the land in controversy, and hence there is no merit in the argument that this part was not definitely fixed by the court.

Judgment affirmed. · GANTT, P. J., concurs. MACFARLANE, J., not sitting, having been of counsel.