JULIA M. MORROW, Executrix of the Estate of WILLIAM H. MORROW, v. PIKE COUNTY, Appellant.

### Division One, June 15, 1905.

1. **CONTRACT WITH COUNTY: Record: Reference to Subject-Matter.** The statute (sec. 6759, R. S. 1899) relating to contracts with the county, to be made upon a consideration wholly to be performed in the future, does not require the whole contract when made to be spread upon the record of the county court, but it is sufficiently complied with if the action of the court be evidenced by a record that in some apt way refers to the subject-matter of the written contract separately executed. And where there was a written contract signed by the three judges of the court and an attorney, whom the court had employed to aid the county attorney in the defense of a certain mandamus suit against the county then pending, a record entry reciting that a certain mandamus suit was pend ng against the county, giving the style of the case, and employing the attorney to defend the suit for the county to final determination, sufficiently identifies the subject-matter of the contract.

2. **———: School Fund: Protection: How Paid.** The burden of protecting the county public school fund, being a fund which does not belong to the county, but a trust fund of which the county court is the trustee, should fall upon the fund itself, on well-recognized equitable principles. And a provision put in a contract employing an attorney to represent the county in

a suit brought by a seminary to recover the county school fund from the county and on the order of the court reciting the making of the contract, that such attorney should be paid out of that fund, did not make the contract of employment invalid, but placed that burden where it belonged.

3. ———: ———: Void Contract. A contract made with an attorney by the county court for services already performed is void under the statute. It is also void if there is no record entry evidencing the making of the contract by the court.

4. ———: Void as to Both Parties. A contract, unperformed, cannot be void as to one of the parties, and binding on the other. If it is void and unperformed, it is void as to both. Where a contract abrogating a former valid contract between the county and an attorney is void because it was for services already rendered and because there was no record entry of the court evidencing it, it cannot be enforced against the county, and held to be valid against the attorney in his suit on the former contract to recover the compensation by it agreed to be paid him.

5. ———: For Services: When Due: Interest. Where no expressed time is mentioned in a contract when the compensation agreed upon for services to be performed is to be paid, the law will read into the contract that the amount became due when the services were rendered. And where the contract was to pay an attorney $2,500 "to defend a suit to final determination," the money became due when this court affirmed the judgment of the trial court.

Appeal from Pike Circuit Court.—*Hon. David H. Eby, Judge.*

MODIFIED AND AFFIRMED.

*John W. Jump, Ball & Sparrow, E. W. Major, Geo. W. Emerson* and *J. D. Hostetter* for appellant.

(1) The contract sued on was invalid for the following reasons: 1st. The record of the county court relating to said contract was not broad enough and did not contain the terms of the contract. A contract made with the county court must be proved by the record alone, and the record itself must contain all the terms of the contract, or the contract must be incorporated in the record. Johnson Co. v. Wood, 84 Mo.

489; Kane & Co. v. Sch. Dist. of Calhoun, 48 Mo. App. 408; R. S. 1899, sec. 6759. 2nd. The record entry of the county court shows on its face that the attorney's compensation is to be paid out of the permanent school fund; hence, it is invalid on its face, as the county court has no authority to contract to pay counsel fees out of the school fund, and hence its act was unauthorized. It may be suggested, in answer to this proposition, that the recital in the record does not mean the common school fund, but does mean the Watson permanent school fund. However, from an examination of the record alone (and this we are confined to under the authorities), there is nothing to disclose that the Watson permanent school fund is meant. (2) While the contract of 1896 might not have been executed in accordance with the provisions of the law relating to execution of contracts by counties, and might have been such a contract as the county court could have avoided because there was no record entry made in connection with the execution of said contract, however, the other contracting party, W. H. Morrow, was under no disability as to making contracts, but could act *sui juris.* It is difficult to see upon what principle of law he could enter into the contract and not be bound by it. An adult may contract with a minor and the contract may be voidable as to the minor, and still the adult will be held to it. Here Morrow voluntarily entered into this contract, annulling the former one, and completed his work so far as the then pending suit of Watson Seminary v. County Court was concerned, under the terms of the latter contract, and subsequently received $1250 under said latter contract and then applied for the remaining $1250 under said contract. Both the county court and Morrow acted under the latter contract as if it had superseded the original. It does not lie in the mouth of plaintiff to repudiate for her intestate the 1898 contract on the ground that the county court might have repudiated the same. The action of

Morrow in accepting the fruits of the latter contract to the extent of $1250 certainly ought to stop him and his executrix from repudiating the binding force of said contract. At the time the 1898 contract was entered into the suit had not then been ended, and no decision had been rendered by the Supreme Court, and it will be noted that Morrow undertook as a condition upon which he should expect payment of the entire $2500 to procure a decision of the Supreme Court giving both the permanent and the rejected Watson school fund to Pike county. This contract he had a right to make, and having made it, should be held to its terms.

*N. W. Morrow, Pearson & Pearson, Dempsey & McGinnis* and *W. O. Gray* for respondent.

(1) While it seems to be clear that there must be a record of the county court showing that a contract was made, that the court authorized a contract to be made, the contract itself need not be spread upon the record, since the statutes, sections 6759 and 6760, Revised Statutes 1899, require the contract to be in writing in duplicate and a copy filed in the office of the clerk of the county court and the copy on file controls in the construction of the contract; there is nothing in cases cited by appellant to militate against this view. The court could not bind a party as upon contract by a mere declaration entered upon its record. He is not there in the capacity of a litigant. Parol evidence is not competent to prove the action of the court. Riley v. Pettis Co., 96 Mo. 321; Dennison v. County of St. Louis, 12 Mo. 394; Maupin v. Franklin Co., 67 Mo. 327. (2) There is no school fund known in the law as the "permanent fund," although in fact permanent. The Constitution, sec. 6, art. 11, designates school moneys as "a public school fund." Secs. 8 and 10, art. 11, speaks of "county school fund." Section 9819, Revised Statutes 1899, designates these funds as in the Constitution, and section 9789 divides the funds. It must be

inferred that the county court, in using the words "permanent school fund," had reference to the $19,000 or $20,000 of the Watson Seminary moneys that accrued prior to 1893 and were held subject to orders of court pending litigation. There is no particular fund out of which Morrow was to be paid designated in the contract, and the contract ought to prevail. Riley v. Pettis Co., 96 Mo. 321. The statute, sections 9824 and 9826, makes it the duty of the county court to collect, etc., moneys belonging to school funds. This duty implies the means, and the county cannot escape liability by a compromise after the entire question had been settled. Water Co. v. City of Aurora, 129 Mo. 576; Reynolds v. Clark Co., 162 Mo. 680. (3) Both parties to a contract must be bound or neither will be. Green v. Cole, 103 Mo. 76; Scott v. Davis, 141 Mo. 225. And the act being void, was not capable of ratification so far as the county was concerned. McFarland v. Heim, 127 Mo. 327, secs. 6759 and 6760, supra. The statute prescribes the mode by which counties, etc., may contract, and this is exclusive. Heidelberg v. St. Francois Co., 100 Mo. 74. Section 1800, Revised Statutes 1899, does not control. Woolfolk v. Randolph Co., 83 Mo. 501. (4) Interest was not improperly allowed. (5) County courts act as agents and must pursue their authority. State ex rel. v. Harris, 96 Mo. 37; Sears v. Stone Co., 105 Mo. 236.

LAMM, J.—To the notable and marking embellishments gracing Pike county in history and tradition, in story as well as song, there was added a spice of uniqueness in a gift by the General Assembly of Missouri, by an act approved January 25, 1847, in favor of Watson Seminary, there situate, in the form of fines then in the treasury of the county and of all moneys thereafter accruing to said county by way of fines, penalties or forfeitures, the principal to be kept intact as a permanent fund, and the accretions of interest to be used for the current purposes of said seminary, all un-

der the supervision of the county court—the details of which the curious may find dug out of the dust of the past and spread of record by this court in Watson Seminary v. County Court of Pike County, 149 Mo. 57.

In 1859 (Laws 1859, p. 46) the Legislature repealed so much of the act of 1847 as diverted said fines, penalties and forfeitures from the school fund of Pike county and gave them as a bounty to Watson Seminary. This repealing act, we infer, was possibly for a spell ignored by the county court as unconstitutional. In 1893, however, that court, refusing longer to permit such diversion of the school fund, but keeping trace of the amount of fines, penalties and forfeitures thereafter accruing in a fund designated as the "rejected fund," used the same to swell the *corpus* of the common school fund as provided in the statutes at large. Thereupon sharp litigation sprang up, Watson Seminary suing out a writ of mandamus against the county court of Pike county, seeking by such moving writ to coerce that court into setting aside all said fines, penalties and forfeitures for the benefit of the seminary's permanent fund. When things were in this fix, on the 3rd day of August, 1896, the court entered into a contract with William H. Morrow, an attorney of the Pike bar, to take care of the interest of the county public school funds involved in that suit and to assist the prosecuting attorney in their defense. The order made in the premises is as follows:

"It is hereby ordered by the county court that W. H. Morrow, attorney heretofore in charge of the defense on the part of Pike county in the suit pending against it, and prosecuted by Watson Seminary as plaintiff in madamus proceedings in the circuit court of Pike county, be and is hereby employed by this court pursuant to an agreement this day entered into with him by the court to defend said suit to a final determination thereof in the court to courts of last resort to which the same may be taken. Compensation agreed

on and expenses and costs to be paid out of permanent school fund.''

And as a part of the business arrangement then made the following contemporaneous written contract was executed:

''State of Missouri, County of Pike. ss.

''County court of said county, August term,1896.

''In consideration of services to be rendered by W. H. Morrow, attorney-at-law, in the suit or action now pending in the circuit court of Pike county, Missouri, in Watson Seminary, pl's, vs. the said county of Pike and the judges thereof, def'ts, by madamus, to compel the payments therein claimed, the said county of Pike, by and through its county court, in regular session convened, agrees and obligates itself to pay to said W. H. Morrow the sum of twenty-five hundred dollars, upon the express condition, however, that said Morrow shall successfully defend said suit in the said circuit court and in any other court or courts to which said cause shall be appealed or otherwise taken pursuant to law; and the said W. H. Morrow agrees and obligates himself to render such services as is necessary, according to the best of his ability, in defending said suit or action. It is further expressly understood that if said suit or action be in the end judicially determined in favor of the plaintiff therein and against the defendant therein, then this obligation to be void; it is understood and agreed, however, that the said county of Pike is to advance and pay, when required, such sum or sums of money in the defense of said suit necessary and requisite to pay all costs and expenses of court fees and printing expenses of transcript or records and briefs prepared in said cause on the part of defendant.

"Made in duplicate and signed and sealed this 3rd day of August, 1986.

"J. W. McILROY, Presiding Judge.
J. R. S. McCUNE, Associate Judge.
EUGENE W. STARK, Associate Judge.
W. H. MORROW."

In pursuance of that employment, Morrow ably and fully performed his part of the contract, tried the case, *nisi,* and won it there, followed it to this court on appeal and won a crowning victory here on the 28th day of March, 1899 (149 Mo. 57, supra), this court deciding all issues in favor of the county court, and by holding the repealing act constitutional, released the county from liability for fines, penalties and forfeitures accruing after 1893, designated as the "rejected fund," and, in effect, overturned and struck to the ground the title of Watson Seminary to all that portion of the "permanent fund" thereof remaining in the hands of the court and which had accrued prior to 1893 from such fines, penalties and forfeitures after the repealing act aforesaid—the amount involved, by and large, being many thousands of dollars.

While this litigation was running its course, on the 9th day of February, 1898, Morrow and the judges of the county court undertook to make a new agreement. The material alteration from the original contract consisting in a provision that while, as in the original contract, Morrow was to be paid nothing if the litigation was adverse, he was to be paid $1,250 out of the "rejected fund" and $1,250 out of the "permanent fund" in case of success as to both funds, but only $1,250 in case of success as to one fund, and the original contract was in set terms abrogated. This new arrangement also referred to past as well as future services as the consideration on Morrow's part, but it was not spread of record nor was any order made of record authorizing it to be made or referring to it, and it is only evidenced

by a written memorandum signed by the judges and Mr. Morrow.

Some four months, to be exact, on August 9, 1899, after the opinion of this court in the mandamus case was handed down, the county court issued its warrant in favor of Morrow for $1,250 to be paid "out of any money in the treasury appropriated for any ordinary county expenses or rejected Watson fund," and this warrant was cashed by him. He then applied for $1,250 more to be paid him out of the permanent fund "as per contract," but nothing was done beyond filing the claim with the county clerk, and shortly thereafter he died. Refusing to settle with his widow, as executrix, she sued the county on the modified contract. Presumably ascertaining that the county court had failed to make any record of the last so-called contract, and defendant by answer denying the contract counted on, she dismissed that suit and brought the present one, for $2,500 and interest after March 28, 1899, counting on the original contract.

On a trial to the court sitting as a jury, the foregoing facts appeared and it was shown moreover that, after the final disposition of the mandamus case, counsel for Watson Seminary shrewdly conceived the notion of making such a show of further litigation as would force some compromise in regard to the "permanent fund" accruing from fines prior to 1893. Accordingly, they appeared before the county court of Pike county, with Morrow present, and sought a compromise, contending that the force of the former adjudication was spent upon the "rejected fund" alone. *Per contra,* Morrow contended that the effect of the opinion was to destroy the right of Watson Seminary to any fines, penalties or forfeitures accruing after the repealing act, and hence all portion of said accumulation nominally set apart to the permanent fund of Watson Seminary prior to 1893, became by virtue of the decision of this court a part of the common school fund of Pike county.

The county court took Morrow's view and refused to compromise. Subsequently, and after Morrow's death, a suit was brought to give color of claim to a compromise, and the court, as then constituted, bought its peace by making some settlement, the character of which does not appear in the record, but of a trivial sort as contended *ore tenus* by counsel.

The trial below resulted on the 15th day of November, 1902, in a general judgment for the executrix in the sum of $1,553.61 against the county, and to reverse that judgment Pike county appeals, after the conventional preparatory steps.

Sundry contentions were made below, and exceptions saved which are sifted out and now abandoned, the following alone remaining for our consideration:

*First.*  Appellant asked and was refused a mandatory instruction, and insists here that it should have been given because, it says, the original contract was invalid in that the record entry pertaining thereto was not "broad enough" and did not contain the terms of the contract, and in that the said entry shows that the attorney's fees were to be paid out of the "permanent school fund."

*Second.*  Because, although the second contract was void as to the county, yet it was binding upon Mr. Morrow, had been acted upon by him, and by its terms it superseded the original contract now sued upon.

*Third.*  Because the verdict is excessive in that the court erred in computing the interest.  Of these, *seriatim.*

I.  It will be seen that the original contract is assailed only because the record entry is not "broad enough" and does not set forth all the terms of the contract and because thereby Morrow's compensation was to come out of the "permanent school fund."  This contract is not attacked by the county or its learned counsel because of any inherent or statutory lack of power in the county court to make a contract em-

ploying an assistant attorney. The power of the court to contract being conceded, we are relieved from the necessity of examining into the right of a Missouri county court to make a contract for an attorney to assist its prosecuting attorney in civil business, and of construing and applying sections 4951 and 5003, Revised Statutes 1899, and of considering those cases construing the legislative enactment (Laws 1873, p. 18) approved March 11, 1873, giving all county courts authority to hire lawyers, but which was repealed by not being included in the Revised Statutes of 1879 (Butler v. Sullivan County, 108 Mo. 639), and upon which enactment the decisions in Thrasher v. Greene County, 87 Mo. 419, and Thrasher v. Greene County, 105 Mo. 244, were based, and which cases were cited as authority for the holding in Reynolds v. Clark County, 162 Mo. 680, all of which cases are suits against counties on contracts of employment by attorneys for services.

Attending, then, to the assignments of error in this behalf presented for our consideration, and construing the statute relating to county contracts (sec. 6759, R. S. 1899), it will be seen that contracts made by the county court must be in writing and must be made upon a consideration wholly to be performed or executed subsequent to the making of the contract. This statute does not require the contract, when made, to be spread of record, but its spirit seems to be observed if the action of the court be evidenced by a record that, in some apt way, refers to the subject-matter of the written contract executed in pursuance thereof. So that, if it be conceded that the action of the county court must appear by its record (Riley v. Pettis County, 96 Mo. 318; Johnson County v. Wood, 84 Mo. 489), yet the execution of the contract by Morrow could not be proved by an ex parte record, but must appear from his own act in signing the written contract. Taking the scope and purport of that statute into consideration, no reason is

apparent to us why the whole contract should be spread of record in the absence of express provision requiring it.   The record entry ought properly, as this one does, identify the subject-matter of the contract and give the outlines of it, but it would certainly be a vain and useless thing to copy the whole contract upon the record. The statute provides that the contract should be executed in duplicate and one copy filed with the clerk and the other is intended, presumably, for the opposite party, and the object to be subserved by this provision seems to preclude the necessity of recording the contract itself or all of its provisions.   In this case the record entry shows a suit was pending against the county, the character and style of the suit and by whom prosecuted and in what court.   It is not pretended that there were two or more suits pending, and the reference to the suit as a mandamus suit and to the court in which it was pending was a sufficient identification of the subject-matter.   It is said therein that Morrow contracted to defend the suit into the courts of last resort, and what more was necessary for the sensible and orderly transaction of the county business?   To our mind the objection that the entry was not broad enough is without merit.

But the further contention is made under this head that the entry shows Mr. Morrow's compensation was to be paid out of the "permanent school fund," and that, therefore, the contract was invalid.   It will be seen that the written contract does not provide what fund Mr. Morrow's compensation should be paid from, but such fund is wholly left to be regulated by the application of correct principles of law.   The county court, however, did order that it should be paid out of the "permanent school fund," thereby meaning either the "county public school fund," referred to in Revised Statutes 1899, sec. 9824, or meaning the account which was carried on the county books as the "permanent fund" of Watson Seminary.   It matters little which

fund was referred to, for they are precisely the same in contemplation of law, i. e., the permanent fund of Watson Seminary held by the county, which resulted from fines, penalties and forfeitures, since the repealing act of 1859, aforesaid, became *ipso facto,* and *eo instanti* by that repeal a part of the ''county public school fund.'' The county court properly placed the burden of protecting this fund upon the fund itself and this arises from the following propositions: the public school fund does not belong to the county in a technical sense. It is a trust fund, and the county court is merely a trustee to carry out the policy defined by the law-making power in relation to the fund (Ray County to use v. Bentley, 49 Mo. 1. c. 242); it may not divert the general county revenue to its protection, and, on the other hand, it can not apply the school fund to the payment of ordinary county debts. [Knox County v. Hunolt, 110 Mo. 1. c. 75.] But it is fundamental that, conceding the right to make the contract in question, the burden of protecting the trust fund should fall upon the fund itself on well-recognized equitable principles. And so it has been held by this court. For example, Township Board of Education v. Boyd, 58 Mo. 279, was a case of this sort: The Martins purchased a school section in Washington county; and gave their note which, remaining unpaid, the county court, claiming waste upon the land and demanding additional security, obtained an injunction against the Martins, and two of the justices of the county court, Boyd and Johnson, signed the injunction bond. The injunction being dissolved, judgment was obtained against Justice Boyd as surety on the injunction bond in a certain sum of money which he paid. Whereupon, the county court by its order on the county treasurer reimbursed him out of the funds pertaining to the school township. Relators, constituting the board of education, thereupon demanded an order directing the treasurer to reimburse their township

school fund, thus depleted, out of the county treasury in the sum so paid to Boyd. On refusal of the court so to do, a mandamus was sued out, which being refused below, an appeal was taken here and the judgment was affirmed on the ground that "the unreasoning procedure by mandamus is unfitted to solve" a case so full of doubt. Whereupon another suit was instituted in the name of Washington county to recover the sum of money so paid from the members of said county court (Washington County v. Boyd, 64 Mo. 179), and it was held that the plaintiff could not recover. It was said, among other things, that the court was a mere agent of the State for the management of a trust, and that, "It is authorized to sell lands, to lease them, to receive and sue for the purchase money, and if there be danger of loss of a debt contracted for the purchase of these lands, the court, we think, might resort to those extraordinary remedies provided for creditors generally. It might sue by attachment, and, if the purchaser is stripping the land of its timber, and thereby endangering the security for the debt, must the agent of the State stand by and witness this spoliation, and trust to the criminal law to indemnify the township by the fine imposed against persons committing the waste on such lands? Five hundred dollars is the extreme penalty; while the timber destroyed might be worth five times that amount. As careful and honest agents they will guard the interests of their principal as if the property were their own, and as long as they are actuated by an honest purpose to subserve that interest, to hold that they must answer, out of their own means, for any costs or expenses honestly incurred in the endeavor to protect that interest, would tend far more to jeopardize these funds than to hold them entitled to remuneration for such outlays when they have been judiciously and honestly made." It was held furthermore that the money paid out by Boyd should have been repaid him and that it was properly repaid and that if it had not

been repaid, he could have sued and recovered it from the school fund of the township interested in that particular fund.

The direction of the county court in the entry complained of that the expense of preserving the integrity of the school fund held in trust should be placed as a burden upon the fund itself, instead of making the contract illegal, in our opinion, placed the burden directly where it belonged, and had that provision been in the written memorandum signed by Morrow, it would not have rendered the contract invalid.

II. But it is said that the second contract made in February, 1898, while void as to the county, is binding upon Mr. Morrow. That the second contract is void, *in toto*, appears from two propositions. One proposition is that there is no record entry evidencing the action of the county court. The other proposition is that, in the teeth of section 6759, Revised Statutes 1899, the contract was not made upon a consideration wholly to be performed or executed subsequent to the making of the contract, but narrates in set terms that it is made "in consideration of services rendered and to be rendered by W. H. Morrow," etc., in the Watson school fund matter. It will be noted that Mr. Morrow had been in the employ of the county court for a year and six months in and about the matter in hand at the time the second contract was made. We are referred to no principle of law that renders a void contract, between two persons capable of contracting, and not performed, void as to one and enforcible as to the other. The new contract abrogated in terms the former contract, and we are asked to give effect to that provision in the new contract and, having done so, to hold that the contract has no further efficacy so far as Pike county is concerned. Such conclusion, it seems to me, would be a solecism in the law. A contract in a form forbidden by law is absolutely void; in other words, is of no legal effect, and all its provisions are afflicted with the same

vice, and courts would not be so unfair and unjust as to pick and choose between the parties to such contract and enforce it as to one and not as to another. The second contention of appellant is therefore disallowed.

III. The next assignment of error is that the verdict is excessive. No express time is mentioned in the contract when this fee became due. It is payable on condition of performing certain services and the law will read into the contract that the amount became due when the services were rendered. Those services were consummated when the final decision was rendered in the mandamus case in this court. This, under the showing made in the record, was on the twenty-eighth day of March, 1899. When money is to become due under a written contract and no rate of interest is provided, the interest runs at six per cent from the date the money is due. [R. S. 1899, sec. 3705.] The circuit court gave judgment for $1,553.61, thus allowing $303.-61 as accrued interest up to the date of judgment, November 15, 1902. Computing the interest on the principal sum of $2,500 from March 28, 1899, up to the date of the payment on August 9, 1899, and crediting the payment of $1,250, and computing interest on the remainder until the date of judgment shows the amount for which judgment should have been given on the fifteenth day of November, 1902, to be $1,560.26. So that, the judgment was for too little rather than for too much, but as this is an error in appellant's favor, the cause can not be reversed on that account.

. The judgment, however, is erroneous in form, as it is a general judgment against Pike county, instead of being a judgment to be paid out of the public school fund of the county, benefited by the services of Mr. Morrow. It is accordingly modified so as to be satisfied out of the proper school fund, and, as modified, is affirmed.

All concur, except *Marshall, J.,* not sitting.