ALBERTA E. TAYLOR, AS ADMINISTRATRIX OF THE ESTATE OF MATTIE B. ELSBERRY, DECEASED, RESPONDENT, v. AETNA LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT.—154 S. W. (2d) 421.

St. Louis Court of Appeals. Opinion filed October 7, 1941.

Rehearing Denied October 24, 1941.

*Alvin H. Juergensmeyer* and *Jonathan Edwards Clarke* for respondent.

438

*T. W. Hukriede* and *Jones, Hocker, Gladney & Grand* for appellant.

SUTTON, C.—This is an action, brought by plaintiff Alberta E. Taylor, as administratrix of the estate of Mattie B. Elsberry, to recover insurance premiums paid by her on a policy of insurance issued

on her life by defendant, on October 22, 1925. Alberta E. Taylor, the insured's daughter, is the beneficiary in the policy. Mattie B. Elsberry died on March 7, 1938, and the defendant paid the beneficiary the face amount of the policy. This suit is brought on a disability provision in the policy, as follows:

"If, before default in payment of premium and before attaining the age of sixty years, the insured becomes totally and permanently disabled by bodily injuries or disease and is thereby prevented from performing any work or conducting any business for compensation or profit, the following benefit will be available:

"A waiver of the payment of premiums falling due during such disability.

"If before attaining the age of sixty years the insured becomes totally disabled by bodily injuries or disease and is thereby prevented from performing any work or conducting any business for compensation or profit for a period of ninety consecutive days, then, if satisfactory evidence has not been previously furnished that such disability is permanent, such disability shall be presumed to be permanent. In such a case, the benefit shall accrue from the expiration of the said ninety days, but not from a date more than six months prior to the date that evidence of such disability satisfactory to the Company is received at its Home Office. No benefit shall accrue prior to the expiration of said ninety days unless during that period evidence satisfactory to the Company is received at its Home Office while the insured is living that the total disability will be permanent, in which event the benefit will accrue from the commencement of disability.

"If the insured meets with the irrecoverable loss of the entire sight of both eyes, or the total and permanent loss of the use of both hands or of both feet, or of such loss of one hand and one foot, such loss shall be considered total and permanent disability within the meaning of the provision."

The insured attained the age of sixty years on April 22, 1927. Plaintiff alleges that the insured became totally and permanently disabled in December, 1926. It was admitted at the trial that the insured paid defendant semi-annual and monthly premiums on the policy, aggregating $2888.15, from December 26, 1926, to March 7, 1938, the date of insured's death. This suit seeking to recover the amount so paid was commenced on April 21, 1938.

The trial with a jury resulted in a verdict in favor of plaintiff for $1450. Judgment was given accordingly. Defendant appeals.

Defendant assigns error here for the refusal of its instruction in the nature of a demurrer to the evidence. It puts this assignment on the ground that there was no substantial evidence that the insured had become totally and permanently disabled prior to April 22, 1927, when she became sixty years of age.

Plaintiff testified that the insured's husband died in 1925 and the following November in 1926 her favorite brother died, and after that she just seemed to go all to pieces, and from that time she had terrible shortness of breath and swelling of her knees and she couldn't go up and down steps; that from that time she never regained her health and was never able to do her household duties she had always performed; that her knees were very stiff; that she was treated by Dr. Perry Balmer, Dr. Taylor, and Dr. Keeling; that in 1929 she was in Barnes Hospital and Dr. Drew Luten, a heart specialist, was her doctor; that she was in the hospital many times; that Dr. Taylor died in 1931, and Dr. Balmer in 1936; that Dr. Balmer treated insured along in 1926 and 1927 when she had swelling of the knees and rheumatism; that Dr. Taylor treated her in 1927 and 1928; that she went to Dr. Luten the first time in 1929; that that was when she went to Barnes Hospital; that her disability resulting from her sudden breakdown in 1926 continued without interruption until the date of her death; that she never performed her household duties after her breakdown in 1926.

Mrs. Linn Trail testified that she lived next door to the insured in Elsberry; that she noticed a drastic change in the insured in the spring of 1927; that she went to Florida in the fall of 1926 and when she returned in the spring of 1927 she observed quite a shocking change in insured's health; that she was unable at that time to do anything; that she had stiffness in her knees, and when she would get up her knees would just give way and she would have hard falls, and then she had heart attacks; that after that time she couldn't do her housework she had formerly done.

W. B. Ellis, who was a close neighbor of the insured, testified that he had been in the insured's home hundreds of times; that he had been in her home in the daytime and evenings, and she would have cramping spells in her limbs and arms and they would have to lay her down and rub her to get her blood in circulation to get her up in shape so that she could sit around; that she had been practically an invalid for years, and that her condition was generally known to everybody and discussed, and that condition remained permanent from the time of the death of her brother in 1926.

Dr. Drew Luten testified that the insured first consulted him professionally in March, 1929; that at that time she had toxic adenoma of the thyroid, hypertension and heart disease—bad heart disease— and shortness of breath, which made hospitalization necessary; that she entered the hospital in March, 1929, and remained in the hospital until April 17, 1929; that when she left the hospital she was some better, but the same condition existed that existed when she first entered the hospital; that she consulted him on numerous occasions thereafter at the hospital, her last visit to the hospital being in February, 1937; that her condition was sometimes better and sometimes

worse; that in his opinion when he first saw the insured in March, 1929, her condition was not such as to permit her to follow her usual occupation as housewife; that at that time she was incapacitated from performing any of her ordinary duties as a housewife; that he found the same disability existing on the other occasions when she consulted him; that in his opinion from his examination and observation of her she could have been incapacitated from performing the substantial duties of her occupation as housewife from December, 1926.

Dr. F. V. Keeling testified that he treated the insured from 1928; that in 1928 he found her suffering from rheumatism, arthritis in her knees, rapid pulse, and tumor of the thyroid gland, and that later on her blood pressure rose; that those conditions continued until her death; that due to those conditions she was unable to perform her duties as a housewife; that she was hardly able to get up and down the steps at all, and she spent most of her time in bed or in a chair; that the condition he found her in in 1928 evidently had existed for several years.

A number of other witnesses, who were neighbors of the insured, testified to her illness and disability to perform her household duties from December, 1926, until her death.

The evidence shows that insured was never advised as to her real condition, or that she was permanently disabled; that her physicians not only concealed these facts from her, but on the contrary sought to give her encouragement concerning her condition.

It thus becomes evident that plaintiff made out a submissible case for the jury. [Burns v. Aetna Life Ins. Co. (Mo. App.), 123 S. W. (2d) 185; Stahl v. American National Assurance Co. (Mo. App.), 70 S. W. (2d) 78; Hablutzel v. Home Life Insurance Co., 332 Mo. 920, 59 S. W. (2d) 639, 52 S. W. (2d) 480; Heald v. Aetna Life Ins. Co. (Mo.), 104 S. W. (2d) 379; State ex rel. Metropolitan Life Ins. Co. v. Allen (Mo.), 85 S. W. (2d) 469; Lydon v. New York Life Ins. Co., 89 Fed. (2d) 78; New York Life Ins. Co. v. Talley, 72 Fed. (2d) 715; Wenstrom v. Aetna Life Ins. Co., 55 N. D. 647; Mitchell v. Stoddard County Bank (Ky.), 65 S. W. 839; Underwood v. Brockman (Ky.), 29 Am. Dec. 407; Little v. Derby, 7 Mich. 325; Sibley v. Pine County, 31 Mo. 201.]

It is true, as defendant points out, that plaintiff, on April 4, 1938, as beneficiary in the policy, wrote defendant a letter enclosing proofs of death in which letter she stated that demand was being made for a refund of all premiums paid since June 12, 1930, on the ground that the insured was totally and permanently disabled beginning as of that date, and also in the proofs of death stated that the date on which deceased last attended to her usual work was March 5, 1938. Obviously, in view of the overwhelming testimony to the contrary, these statements cannot be regarded as controlling. Moreover, what amounts

to total and permanent disability within the meaning of the policy is a mixed question of law and fact as to which plaintiff could easily have been mistaken, and in this connection it is pertinent to note that plaintiff as administratrix wrote defendant on April 20, 1938, that "the insured Mattie B. Elsberry was totally and permanently disabled within the meaning of the total and permanent disability provision of the policy from December, 1926, until the date of her death, on March 7, 1938." Her statement in the proofs of death was made in answer to a question that was subject to different meanings and might have been misunderstood. Besides, the date fixed was just two days before insured's death. She had just previously made like answers to two questions as to when insured first complained of her last illness and when she first consulted a physician for her last illness. Evidently, in the answers she made she referred to the date when the insured had become absolutely helpless and just at death's door. To say, under the evidence before us, that her statement as to the date insured last attended to her usual work she meant that insured two days before her death was able to personally perform the physical labor of ordinary household work, would be preposterous. Nobody disputes that insured was unable to perform such work for years prior to her death.

The instruction in the nature of a demurrer to the evidence was properly refused.

Defendant assigns error upon the giving of plaintiff's instruction No. 2. It puts this assignment on the ground that the instruction authorizes a verdict for plaintiff if insured was totally disabled at any time before attaining the age of sixty years, when under the policy the insured had to be totally disabled for a period of ninety days prior to attaining the age of sixty years to authorize a verdict for plaintiff. But the instruction does not authorize a verdict for plaintiff on that hypothesis alone. It requires the jury to find not only that the insured was totally disabled before she attained the age of sixty years, but also requires the jury to find that she was continuously thereafter totally disabled up to the time of her death. The policy does not require that the insured be totally disabled for ninety days before she attained the age of sixty to entitle her to a waiver of the premiums for total and permanent disability. It only requires that she be totally disabled for a period of ninety days before attaining the age of sixty to authorize a presumption that she is permanently disabled. The instruction does not predicate a recovery upon a presumption of permanent disability, but upon a finding of permanent disability—not upon presumed permanent disability, but upon actual permanent disability as shown by the evidence.

Defendant further complains that the instruction is erroneous for authorizing a recovery of all the premiums paid on the policy during

the period of insured's disability prior to the furnishing of evidence of her disability, by her letter of April 20, 1938, insisting that under the terms of the policy the insured is only entitled to a return of the premiums paid within the period of six months prior to the date that evidence of her disability was furnished. To this we are unable to agree. The policy provides that if the insured before attaining the age of sixty years becomes totally and permanently disabled, she will be entitled as a benefit to a waiver of the payment of premiums falling due during such disability. It then provides in a separate indented paragraph that if the insured before attaining the age of sixty years becomes totally disabled for a period of ninety consecutive days, then if satisfactory evidence has not been previously furnished that such disability is permanent, such disability shall be presumed to be permanent, and that in such case the benefit shall accrue from the expiration of said ninety days, but not from a date more than six months prior to the date that evidence of such disability is furnished, and that no benefit shall accrue prior to the expiration of said ninety days unless during that period evidence satisfactory to the company is furnished that the total disability will be permanent, in which event the benefit will accrue from the commencement of disability. In order that the benefit shall accrue prior to the expiration of the ninety days, satisfactory evidence that the total disability will be permanent must be furnished during that period. But when does the benefit accrue if satisfactory evidence has not been furnished during that period that such disability will be permanent, and such disability is presumed to be permanent? The policy provision says that in such case the benefit shall accrue from the expiration of said ninety days, but not from a date more than six months prior to the date that evidence of such disability has been furnished. The language is extremely puzzling. Does it mean that where such disability shall be presumed to be permanent the insured must nevertheless furnish to the company evidence that such disability is permanent else the benfit will not accrue from a date more than six months prior to the date of furnishing of such evidence. Surely, this is not so. The evidence to be furnished is evidence of total disability existing during the period of ninety days, else permanent disability will not be presumed. In other words, permanent disability will not be presumed until such evidence of total disability has been furnished, and the benefit in such case will not accrue more than six months prior to the date of furnishing such evidence. But where, as here, plaintiff shows actual permanent disability as distinguished from mere presumptive disability, must she also show that she furnished the company with evidence of total disability existing for a period of ninety days and have the accrual of her benefit limited to a date not more than six months prior to the furnishing of such evidence? Does the policy provision mean that the insured must in every case furnish evidence of such disability as

a condition precedent to the accrual of the benefit and that in no case shall the benefit accrue from a date more than six months prior to the date such evidence is furnished? The policy does not say so. Astute lawyers by acute analysis and a labored course of reasoning may arrive at such a meaning, but the policy should be construed as the average person would construe it. The insuring clause grants the benefit unconditionally if the insured "becomes totally and permanently disabled." This unconditional grant ought not be disturbed by a subsequent enigmatic restrictive clause. The policy should be construed in view of the purpose of its creation, that is, protection against disability. The testimony abundantly shows, without substantial dispute in the record, that the insured was totally and permanently disabled from December, 1926, until the day of her death. During all that time, in evident ignorance of her rights, she paid premiums, which, on account of her disability, she did not owe. She was entitled to have her policy maintained in force without the payment of a single one of these premiums. She had already paid for that protection. She did not get the protection for which she paid. Defendant received money which in good conscience it is not entitled to retain.

We conclude that there was no error in the giving of plaintiff's instruction.

Defendant further insists that the verdict of the jury is not responsive to the issues and cannot stand for the reason that under plaintiff's instruction she was entitled to recover $2,888.15, whereas the verdict of the jury was for only $1450. Defendant thus complains that the jury awarded plaintiff by way of damages an amount much less than she was entitled to under the instruction.

It is generally held that the fact that a judgment, decree, or verdict, is for a less sum, or awards less relief, than the prevailing party is entitled to, furnishes no ground for complaint by the party against whom such judgment, decree, verdict, or award, is rendered. [Crigler v. Duncan, 121 Mo. App. 381, 99 S. W. 61; Alderman v. Cox, 74 Mo. 78; Beckham v. Puckett, 88 Mo. App. 636; Morrow v. Pike County, 189 Mo. 610, 88 S. W. 99; Lebanon Light, etc., Co. v. Lebanon, 163 Mo. 246, 63 S. W. 809; Macklin v. Kinealy, 141 Mo. 113, 41 S. W. 893; Crawford v. Ahrnes, 103 Mo. 88, 15 S. W. 341.]

But defendant here contends that the verdict shows that the jurors awarded plaintiff only $1450 as damages because they found that the insured was not totally and permanently disabled before she attained the age of sixty years, but became so disabled afterwards. We do not see why they could have so found, for they were distinctly told in the instruction that to authorize verdict for plaintiff they must find that the insured was totally disabled before she attained the age of sixty years, on April 22, 1927, and was continuously thereafter totally disabled to the date of her death. Moreover, the in-

struction directed a verdict for an amount "not exceeding $2,888.15, the amount sued for," concluding with "and you may if you find for plaintiff allow interest on such sum as you find due plaintiff on April 20, 1938." This phraseology doubtless accounts for the award of a sum less than $2,888.15. The phraseology "not exceeding $2,888.15, the amount sued for" and "such sum as you may find due plaintiff" might readily have given the jurors to understand that they were at liberty in their discretion to award damages in an amount less than the aggregate of the premiums paid during the period of disability hypothesized.

Finding no error in the record, the Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *McCullen* and *Anderson, JJ.,* concur; *Hughes, P. J.,* not sitting.