**Lucille B. LANDERS, Plaintiff-Respondent,**

**v.**

**Carl J. MAYFIELD et al., Defendants,**

**and**

**Missouri Union Insurance Company, a Missouri Corporation, Garnishee-Appellant.**

**No. 47704.**

Supreme Court of Missouri,

Division No. 2.

June 13, 1960.

Goldenhersh & Goldenhersh and Samuel J. Goldenhersh, St. Louis, C. William Garver, Kansas City, for appellant. Melvin L. Hertzman, St. Louis, of counsel.

Gordon & Cochrane, William W. Cochrane, Jr., Kansas City, for plaintiff-respondent.

JAMES W. BROADDUS, Special Judge.

This is an appeal by Missouri Union Insurance Company from a judgment against it based upon a garnishment in aid of an execution.

Another phase of this controversy was before this Court in Couch v. Landers (Missouri Union Insurance Company), 316 S.W.2d at page 588, decided on September 8, 1958. It involved an appeal from a judgment in the Circuit Court of Jackson County for $14,000 on a joint motion for judgment on the pleadings by plaintiff, Couch, and cross-claimant, Lucille B. Landers, against defendant Missouri Union Insurance Company. This Court remanded the cause with directions to the trial court to grant leave to appellant to file answer to the petition and cross-claim. That cause (No. 593,678) was dismissed in the trial court prior to the institution of the instant proceeding.

The pertinent facts on this appeal are: On April 28, 1954, plaintiff, Lucille B. Landers, filed her petition for the wrongful death on April 22, 1954, of her husband, John Landers, who was injured on April 17, 1954, while riding as a passenger in an automobile driven by defendant, Carl J. Mayfield. On February 8, 1956, Mrs. Landers obtained a judgment based upon a jury verdict, against Mayfield for $15,000. No appeal from that judgment was perfected.

On December 15, 1958, Mrs. Landers caused a general execution to be issued against defendant Mayfield based upon the $15,000 judgment. On December 29, 1958, appellant Missouri Union Insurance Company was served with a summons of garnishment on said execution. Mrs. Landers submitted interrogatories to appellant as garnishee, which were all answered in the negative. Thereafter, on February 4, 1959, Mrs. Landers filed her denial of appellant's answers to the interrogatories. Appellant failed to file a reply.

In her denial of garnishee's answers to the interrogatories Mrs. Landers alleged that on November 6, 1953, The Insurance Company of Texas (hereinafter referred to as I.C.T.) was engaged in the business of insuring persons against liability for loss resulting from the use of automobiles; that said I.C.T. entered into a contract with defendant Mayfield, whereby it insured the latter for the period of November 6, 1953, to November 6, 1954, against liability because of the death of any person sustained by accident and arising out of the use of his automobile to the extent of $15,000; that while said policy of insurance was in full force and effect her husband was riding as a passenger in the automobile designated in said policy; that while said automobile was being driven by the named insured, Mayfield, it collided with another automobile causing said John Landers to suffer severe injuries which resulted in his death on April 22, 1954; that on February 8, 1956, she obtained judgment against Mayfield in the sum of $15,000.

Mrs. Landers further alleged that on September 30, 1955, and while her suit against Mayfield was still pending, I.C.T., Mayfield's insurer, and Missouri Union Insurance Company, appellant-garnishee, entered into a written contract under which garnishee agreed to reinsure 100% of the policy liability of I.C.T. on all policies written by it, including the policy issued to defendant Mayfield. This instrument is styled "Treaty of Reinsurance."

Plaintiff Landers also alleged that pursuant to the "Treaty of Reinsurance," garnishee, through its attorney Melvin L. Kodas, conducted the defense of Mayfield in the wrongful death action; that after the judgment for $15,000 was rendered appellant-garnishee authorized its attorney Kodas to settle said judgment for the sum of $14,000; that plaintiff, through her attorney, Couch, agreed to the settlement; that at the time of the service of the writ

of garnishment appellant-garnishee was indebted to Mayfield, the defendant and judgment debtor, for the sum of $14,000.

The instant case was tried to the Court, a jury having been waived. Plaintiff's evidence was for the most part admitted by stipulation or without objection. She proved her judgment against Mayfield for $15,000 and that the judgment remained unsatisfied; that the automobile liability policy had been issued to Mayfield by I.C.T. She offered in evidence without objection the contract designated "Treaty of Reinsurance." She called Mr. Kodas as a witness. He testified that he was originally engaged by I.C.T. to represent Mayfield in the suit of Landers v. Mayfield; that Mr. Wall, Vice-president and Claims Manager of appellant Company, told the witness that appellant had taken over the Missouri business of I.C.T.; that prior to the trial of the Landers v. Mayfield case witness received his directions and authority from appellant Company; that prior to trial Mr. Wall told him that appellant was the company on the case and that I.C.T. was not involved in it.

At the conclusion of the hearing the Court entered its interlocutory order finding that appellant was indebted to defendant Mayfield in the sum of $14,000 with interest from April 30, 1956, and ordering garnishee to pay said sum into Court for the use of plaintiff. Final judgment against appellant-garnishee in the sum of $16,450 was entered on April 24, 1959. Appellant's motion for new trial was overruled and this appeal followed.

Appellant's first point is that: "The trial court had no authority to enter the subject judgment against appellant since respondent had no cause of action against appellant, as garnishee, under the settlement agreement pursuant to which said judgment in garnishment was entered." In support of this assignment appellant cites Sec. 513.015 RSMo 1949, V.A.M.S., which reads as follows: "The party in whose favor any judgment, order or decree is rendered, may have an execution in conformity therewith."

The record shows that the execution was issued for $15,000 and was based on the judgment of February 8, 1956, in favor of Mrs. Landers and against defendant Mayfield. The execution was in the form specified in Sec. 513.025 RSMo 1949, V.A.M.S. The summons of garnishment served upon appellant was *in conformity* with the execution. Plaintiff offered no evidence relative to the alleged settlement agreement, and announced at the trial that she did not rely upon it. Certainly appellant is in no position to complain because the trial court rendered judgment for a lesser amount than that specified in the judgment of February 8, 1956, and upon which her execution was based. Taylor v. Aetna Life Ins. Co., 236 Mo.App. 435, 154 S.W.2d 421, 425, par. 6.

Appellant next contends that the instant judgment should be reversed because "*if* respondent is not relying on a settlement agreement, but is attempting to establish a garnishment on the Court's judgment, appellant is entitled to set forth any of the equitable defenses or other defenses it may have." Appellant does not enlighten the Court as to what proper defenses it has. The fact is, it has no defense. Since the appeal herein was taken this Court on November 9, 1959, decided the case of O'Hare v. Pursell, Mo., 329 S.W.2d 614.

In the O'Hare case the question involved was the liability of the instant appellant to an insured under an I.C.T. automobile liability policy by virtue of the *same* "Treaty of Reinsurance" as set forth in plaintiff's Exhibit 3 in the instant case. In holding this appellant liable under the terms of the I.C.T. policy, this Court said loc. cit. 621:

"There is no need or room for *construction* of the language of the instant Treaty of Reinsurance to determine whether reinsurer contracted to assume the policies and the liability of the reinsured to pay the sums due thereunder. In plain, unambiguous terms reinsurer specifically assumed those obligations. * * * It is a contract

to indemnify against *liability,* in which reinsurer specifically and in clear terms assumed the total liability of reinsured on its outstanding policies and agreed to service, adjust and settle obligations directly with the insureds on their losses upon the basis of the liabilities of reinsured under its contracts. Reinsured agreed to turn over all its books, papers, records, etc., to reinsurer, which was authorized to and agreed to do all things it deemed expedient in the servicing and handling of the insureds' policies, including the commencement, defense and compromise of, or withdrawal from, lawsuits. * * * Reinsurer's liability was 'based upon the same terms and conditions as those of the policies of the ceding company.' There is no difficulty in concluding that the Treaty was made for the benefit of the policyholders of reinsured. * * * For all practical purposes Missouri Union became and was substituted for I.C.T. insofar as the insureds were concerned."

In the instant case appellant offered its Exhibit II, which included (1) the Treaty of Reinsurance between I.C.T. and appellant, (2) Addendum II, dated September 27, 1956, which was the cancellation of the Treaty of Reinsurance of September 30, 1955, and (3) Addendum I, entitled "Retrocession and Quota Share Agreement of Reinsurance."

In the O'Hare case this Court ruled as follows on the cancellation agreement, loc. cit. 622:

"The purported cancellation of the treaty doubtless effectively cancelled the mutual and reciprocal duties of the parties signatory as between themselves, but it could not and did not effect an extinguishment of the obligations of reinsurer to the insureds (obligations which had accrued prior to the cancellation), in the absence of a consent on the part of the insureds to such extinguishment."

Regarding the Retrocession and Quota Share Agreement, the opinion stated, loc. cit. 623:

"Reading the two instruments together the conclusion is inescapable that (1) the treaty gives the policyholder the right to sue Missouri Union directly for the full amount due under a policy and that (2) the retrocession agreement neither gives rights to nor subtracts rights from the policyholder. The retrocession agreement has no effect upon the rights of the policyholders."

The judgment is affirmed.

LEEDY, P. J., and EAGER and STORCKMAN, JJ., concur.