GEORGE F. HABLUTZEL v. HOME LIFE INSURANCE COMPANY OF NEW YORK, Appellant.—59 S. W. (2d) 639.

Division One, April 20, 1933.

*Jones, Hocker, Sullivan & Gladney* for appellant; *Benjamin R. C. Low* of counsel.

*Leahy, Saunders & Walther* and *J. L. London* for respondent.

*William C. Michaels, Kenneth E. Midgley, Meservey, Michaels, Blackmar, Newkirk & Eager, Jourdan & English* and *R. F. O'Bryen* amici curiae.

924

GANTT, J.—Action to compel the specific performance of certain provisions of a life insurance policy issued by defendant to plaintiff and to recover premiums paid under said policy during a permanent disability of plaintiff. The judgment for plaintiff was affirmed by the St. Louis Court of Appeals and the case certified to this court on the dissent of a judge of that court. [Hablutzel v. Home Life Ins. Co., 52 S. W. (2d) 480.]

The policy was issued on June 1, 1915. It contains a "permanent disability benefit" provision. In April, 1920, plaintiff became permanently disabled. In ignorance of this provision the wife of plaintiff continued to pay the semi-annual premiums on the first of June and first of December. There was no default in the payment of premiums and the disability of plaintiff is not controverted.

I. Defendant contends there was no evidence tending to show that plaintiff furnished "due proof" of his disability before he attained the age of sixty. The policy did not require proof to be in writing and verified. The Court of Appeals correctly summarized the testimony of the witnesses as follows:

"Mrs. Hablutzel, plaintiff's wife, testified: 'My custom and habit was to pay the premium on the policy on the first of every six months. I always paid it. I took care of it because my husband was sick. I paid it at the defendant's office in St. Louis. I talked to Miss Samuels at defendant's office, concerning the premium due June 1, 1922. I told her I didn't have the funds to pay the premium and asked her to give thirty days extension. I told her I was my husband's main support and that I had a pretty hard time making ends meet, and she gave me that extension. The premium was not due until thirty days after June 1st, but it worried me because we had always paid it around the first of June, or the first of December. Miss Samuels was the local cashier for the Home Insurance Company. She always waited on me. I told her that my husband was permanently disabled, and the doctor did not expect him to live. I did not know at that time that the policy contained the total disability clause. I told Miss Samuels that my husband was totally and permanently disabled. I told her the doctor said he was totally and permanently disabled and that he was very ill. The premium due on June 1, 1922, I paid to Miss Samuels on June 24th.'

"Margaret Hablutzel, plaintiff's daughter, testified: 'I recall going to the office of the Home Insurance Company in 1922, with my mother, and asking for an extension of the time for paying the premium then due on the policy. That was in the early part of June, because I had just come from school at the end of the school term. Mother always spoke to Miss Samuels, who was always so nice to her when she would pay the premiums. At the time we went down we were having a very hard time because my father had just come from the hospital. Mother went down and asked if she could have an extension, because she didn't see how she could possibly raise the money at that time. Miss Samuels was very nice and said she had thirty days grace. Mother told her how dad was permanently disabled, and that it was up to her to take care of me and the home. At that time I was only thirteen years old, and didn't know anything about the disability clause in the policy. Mother and I went to the Home Life Insurance Company office in the early part of June and asked if we could get a thirty days extension because we couldn't pay the premium at that time—the funds were so low. Miss Samuels said we could have thirty days grace, and she would make a note of it and that we should not worry. Mother told her my father was permanently disabled and that two or three doctors had only given

928

him six months to live. The doctors stated they would only give him six months to live.'

"Miss Samuels, being produced by defendant, testified: 'I have been connected with the Home Life Insurance Company since 1919, at its office in St. Louis. My duties were in connection with premiums. I was agency cashier. I do not recall the conversation testified to by Mrs. and Miss Hablutzel. I do not recall it definitely enough to deny or confirm it. The usual procedure in handling disability claims is that the insured, or some one in the insured's family, notifies the company of his disability, and then we get in touch with the agent who wrote the policy, and he has to make a report that the insured is disabled and is claiming on the disability. The claim is to be filled out by the person disabled or some member of his family. I have had conversations with Mrs. Hablutzel. All policy holders talk to me. When the company is notified of a permanent disability it is the duty of the agent who wrote the policy to go out and take proofs. At the time Mrs. Hablutzel says she had this conversation with me it was not my duty then to have charge of the disability claims unless they asked me something about them. At this time I do not recall definitely that I ever had any conversation with either Mrs. or Miss Hablutzel concerning the disability or sickness of their husband or father. It is all vague to me; I don't remember anything about it. The first I remember is when some woman of another company came in and notified us that the insured was disabled, and I immediately sent for the papers. That was about May, 1920.' "

■■ It is clear from the evidence that on notice of a permanent disability, defendant caused its agent to make an investigation, "Take proofs" from "the person disabled or some member of his family," and report to defendant.

Thus it appears that defendant construed the words "due proof" in this provision of the policy to mean notice. However, it contends that the wife of plaintiff in stating to the cashier that her husband was permanently disabled, did not thereby intend to give notice that he was so disabled. Even so, the policy does not provide that the insured shall intentionally furnish due proof or notice of permanent disability. The cashier must have known the policy contained a permanent disability provision, for on the face of the receipts she gave on payment of the premiums was a statement of the additional amount charged for disability insurance. On notice of the permanent disability of plaintiff the cashier should, as usual, have caused an agent to "take proofs and report to defendant." We think that plaintiff before attaining the age of sixty complied with this provision of the policy as it had been construed by defendant.

■ II. Defendant next contends that proof or notice of disability fixes the beginning of the waiver of the payment of premiums.

The provision of the policy determines the question. It follows:

"If, after one full annual premium shall have been paid hereon and before default in the payment of any subsequent premium, the insured shall, before attaining the age of sixty years, furnish due proof to the Company that he has become totally disable by bodily injury or by disease, so that he is and shall be permanently, continuously and wholly incapacitated for life and prevented thereby from pursuing any gainful occupation, the Company by endorsement hereon shall agree to waive the payment of premiums which may thereafter fall due during the continuance of such disability."

The essence of the foregoing provision is that "if the insured shall furnish due proof that he has become totally and permanently disabled, the company will waive the payment of premiums thereafter becoming due." In ruling the question the Court of Appeals said:

"Does this provision mean that the company will waive premiums becoming due after the insured has furnished proof, or after he has become disabled? We construe it to mean that the company will waive premiums becoming due after the insured has become disabled, because this construction is more favorable to the insured, and more in consonance with the purpose of the provision, which is to give protection to the insured against disability. If it was the intention to waive only the premiums becoming due after the furnishing of proof, it would have been an easy matter for the company, who wrote the policy, to have said so in plain words."

The question was well ruled. We adopt this ruling of the Court of Appeals. [Mathews v. Modern Woodmen, 236 Mo. 326, l. c. 346, 350, 139 S. W. 151.] ■ In this connection it should be stated that defendant challenges the petition for failure to allege that plaintiff furnished "due proof" of disability. The petition alleged that plaintiff gave notice of disability. This allegation was sufficient, for defendant by its conduct construed "due proof" to mean notice.

■ III. Defendant next contends that "the court below erred in finding that the plaintiff was entitled to recover of the defendant the premiums, with interest, paid by the insured under the policy in suit from 1920 to the time of the institution of this suit and in entering judgment against defendant for that amount."

Defendant also contends that "at any event the amount of money judgment awarded to the plaintiff was excessive."

We do not find these assignments of error or their equivalent in the motion for a new trial. It follows that the assignments are not for review. [Bond v. Williams, 279 Mo. 215, 214 S. W. 202; Waters v. Gallemore, 41 S. W. (2d) 870, l. c. 872; Belcher v. Haddix et ux., 44 S. W. (2d) 177.]

The judgment should be affirmed. It is so ordered. All concur, except *Hays, J.,* not voting because not a member of the court when cause was submitted.