# MARCH, 1935.

CHARLES R. MOSS, RESPONDENT, v. METROPOLITAN LIFE INSURANCE CO., APPELLANT.—84 S. W. (2d) 396.

St. Louis Court of Appeals. Opinion filed July 2, 1935.

Appellant's motion for rehearing overruled July 16, 1935.

*W. A. Brookshire* for respondent.

*Fordyce, White, Mayne & Williams* and *R. E. LaDriere* for appellant.

*Leroy A. Lincoln* of counsel.

74

SUTTON, C.—This is an action on what is known as a group policy of insurance issued by defendant to the St. Joseph Lead Company for the benefit of its employees.

The policy provides as follows:

"Upon receipt, at its Home Office in the City of New York, of 'due proof that any Employee, while insured hereunder and prior to his sixtieth birthday, has become totally and permanently disabled, as the result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, the Company will waive the payment of further premiums as to such Employee and six months after receipt of such proof, will commence to pay, in lieu of the payment of insurance at his death, monthly installments as defined below to the said Employee . . . and will continue such payments for the period provided below, should the insured continue totally and permanently disabled."

It is conceded that the succeeding provisions of the policy entitle plaintiff to sixty-nine monthly installments of $43.59 each, if he became totally and permanently disabled while the policy was in force. The policy is a monthly renewable term policy. It was in force on March 31, 1932, but it was not afterwards renewed. Plaintiff at the time of the issuance of the policy was in the employ of the St. Joseph Lead Company, as a laborer in its lead mines, and continued in its employ until he was laid off some time in April, 1932.

Plaintiff sues to recover monthly installments of $43.59 each for total and permanent disability which he alleges existed at the time

of the lapse of the policy and prior thereto. He made out and forwarded to defendant due proof of his disability, which was received by defendant at its home office in New York on June 6, 1932. On September 26, 1932, defendant notified plaintiff that it denied all liability under the policy. On August 26, 1933, this action was commenced.

The trial, with a jury, resulted in a verdict in favor of plaintiff for $653.85. Judgment was given accordingly, and defendant appeals.

Error is assigned by defendant here for the refusal of its instruction in the nature of a demurrer to the evidence. The assignment is put on the ground that there was not sufficient evidence to show the existence of total and permanent disability while plaintiff was insured under the policy.

Plaintiff testified that prior to March 31, 1932, and during that month he had been short-winded, and the least exercise would double the beat of his heart; that he had sick stomach, headache, and backache continuously, and was still that way at the time of the trial; that he had spells that hit him in the head and would knock him out for a short while, and that he had to catch hold of something to keep from falling; that he had these spells three or four times a month for about six months before March, 1932; that these spells made him feel as if something struck him in the head; that they put his eyesight out and knocked him unconscious, made him sick at the stomach and weak in the legs; that the work he did seemed to cause these spells; that he could not sleep at night; that he would roll around for two or three hours before he could get to sleep; that he would wear himself out before he could get to sleep; that sometimes he had to get up and rub his head and neck and shoulders to get relief; that sometimes he smothered in bed; that these spells came regularly about two or three times a week; that he had them for the last year before he was laid off; that he did not want his employer to know that because he was afraid they would lay him off; that he knew he would get laid off sooner or later if his employer discovered that; that he was not able to do any work and had not done any since April, 1932; that his eyesight was failing fast and was failing in March, 1932; that his kidneys were bad, and were in March, 1932; that he worked sixteen days, four days a week in April, 1932, because he had to work; that he had a family of seven children, and it took all his money to provide for them, but that he did not feel able to work; that when he got home from work sometimes he did not eat and was all in; that his condition at the time of the trial was a little worse than in March, 1932, and he was not able to do any work; that he was fifty-three years old; that he had a country school education up to the fifth grade; that he did farming and a little carpenter work until he went to work for the St. Joe Lead Company in 1906; that he had done some carpenter work as a helper; that he worked for the St. Joe

Lead Company eighteen or twenty years until he was laid off in April, 1932; that during the months of March and April, 1932, he had pains; that he had a continuous pain around 'his heart and his head mostly; that his joints would swell up around the fingers and ankles.

Dr. Joseph Hardy testified for plaintiff that he made a general physical examination of plaintiff on May 2, 1932; that in this examination he took his height, weight, blood pressure and pulse, examined his lungs and kidneys, and made a urinalysis; that he had a blood pressure of 240, which was abnormal; that his blood pressure should have been about 150 to 160; that his pulse was 88, which was abnormal; that his pulse should have been 72; that the heartbeat sound was accentuated and strong, indicating an abnormal condition in the lungs and bronchial tubes; that he had bronchitis; that his teeth were bad; that his gums were pale red; that his pulse was irregular; that he had colitis, and was troubled with headaches and dizzy spells; that the urinalysis showed a specific gravity of 1030, which was abnormal, indicating nephritis or inflammation of the kidneys; that these conditions indicated lead poisoning; that he made a report of total disability; that in his opinion it would be dangerous for a man in his condition to work at ordinary manual labor; that he examined plaintiff again on July 6, 1933, and found him generally in the same condition with reference to his pulse, heart, teeth, bowels, specific gravity of urine, headache, backache and dizzy spells; that these conditions prompted the idea of lead poisoning and total disability; that the conditions which he found with reference to his heart and high blood pressure would most likely be permanent; that these conditions came from arteriosclerosis or hardening of the arteries, and that it was likely he would never get over that; that the nephritis condition would be permanent as would also the condition of the heart; that his condition had probably existed for a number of months, possibly four or five or six months, at the time of his first examination; that he was reasonably sure that plaintiff's condition was permanent; that he determined lead poisoning by convincing symptoms and the fact that he worked in lead; that in his opinion plaintiff was wholly unable to engage in any work, occupation or business.

Plaintiff's wife testified on his behalf that when plaintiff came home from work he was worn out completely; that he had dizzy spells; that at night he would sit on the side of the bed and could not sleep; that he had smothering spells at night about twice a week; and that this condition existed at the time of the trial.

Joe Declue testified, for plaintiff, that he worked with plaintiff one day in the winter before he was laid off in 1932, around January or March of that year, probably in March; that he was gang leader on

that job and plaintiff was sent over to him as an extra man; that plaintiff could not do the work at all, so that he just worked that day; that they pulled him through that day on that work; that he could not do the work at all.

Arnold Horn testified, for plaintiff, that he worked with plaintiff at the St. Joseph Lead Company at different times; that he could not recall the exact time that he worked with him, but believed it was the latter part of 1931; that in the performance of his work the other workmen would have to stop and wait on him, and he would have to take spells of rest.

Policy provisions insuring against total and permanent disability, such as the provision here involved, are not given a strict and literal construction, but are given a liberal construction, on the theory that the fair intention of the parties to the contract is that the insured shall receive indemnity when he is disabled as a result of bodily injury or disease to the extent that he is unable to carry on any occupation, business, or profession, which without the disabling injury or disease he would be able to engage in. It is not required that he shall be absolutely helpless, but he is totally disabled when the infirmity from which he suffers renders him unable to perform in the usual and customary way substantially all the material acts of any occupation, business, or profession, he would be able to engage in but for his disabling infirmity. The mere fact that he performed the duties of his occupation for a time is not sufficient in itself to defeat his claim of total disability. He may have worked when really unable and at the risk of endangering his health or life. The fact that under distressing circumstances a strong will and great courage caused him to do what he was unable to do without great physical pain and effort, or without endangering his health or life, or what common care and prudence would require a person in his condition to desist from doing, does not as a matter of law show that he was not totally disabled. [Rickey v. New York Life Ins. Co. (Mo. App.); 71 S. W. (2d) 88; Missouri State Life Ins. Co. v. Case (Ark.), 71 S. W. (2d) 199; Kemper v. Police & Firemen's Ins. Assn. (Tex.), 44 S. W. (2d) 978; Lumbra v. United States, 54 Sup. Ct. Rep. 272; Home Life Ins. Co. v. Ward (Ark.), 75 S. W. (2d) 379; Kinyon v. Kinyon (Mo. App.), 71 S. W. (2d) 78; McMahon v. Supreme Council, 54 Mo. App. 468; Travelers' Ins. Co. v. Turner (Ky.), 39 S. W. (2d) 216; James v. United States Casualty Co., 113 Mo. App. 622, 88 S. W. 125; Aetna Life Ins. Co. v. Wyant (Ky.), 61 S. W. (2d) 50; Mutual Benefit Health & Accident Ass'n v. Bird (Ark.), 47 S. W. (2d) 812; Foglesong v. Modern Brotherhood of America, 121 Mo. App. 548, 97 S. W. 240; Equitable Life Assur. Soc. v. Merlock (Ky.), 69 S. W. (2d) 12; Prudential Ins. Co. v. Harris (Ky.), 70 S. W. (2d) 949; Kane v. Metropolitan Life Ins. Co. (Mo. App.), 73 S. W. (2d) 826.]

It is manifest that this court may not say as a matter of law that plaintiff here did not become totally and permanently disabled, while the policy was in force, within the meaning of the policy. To do so would be to ignore the undisputed testimony.

Defendant complains of the giving of plaintiff's instruction No. 1. The instruction directs a verdict for the plaintiff upon a finding that on and before March 31, 1932, while the insurance was in full force and effect, plaintiff became totally and permanently disabled as the result of high blood pressure, lead poisoning, diseased heart, diseased kidneys, or either of them, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit without endangering his life or health. Defendant complains of the instruction on the ground that the qualifying phrase, "without endangering his life or health," employed in the instruction, ought to have been qualified by the word "imminently," or "immediately," or some similar word, showing a requirement of unusual danger, as distinguished from the danger ordinarily incident to his employment or occupation, before recovery could be had. We can see no merit in this complaint. The instruction expressly requires a finding that plaintiff's disability resulted from his diseased condition, and surely the jury must have understood that the qualifying phrase, "without endangering his life or health," referred to the danger resulting from his diseased condition and not from the danger ordinarily incident to his employment or occupation.

Defendant also complains of plaintiff's instruction No. 3. The instruction tells the jury that, in determining the question as to whether or not plaintiff was, on March 31, 1932, and has been continuously since said date, totally disabled, it is not necessary that he was and has been absolutely physically disabled to such an extent as to render him unable to perform any act pertaining to any occupation, business, or profession he might be able to follow, but that it is sufficient that his ailments and diseases are such that common care and prudence would require him in order to preserve his life and health to desist from the pursuit of his occupation, business, or profession, and that if he was, on March 31, 1932, and has been continuously since said time, unable because of his ailments and diseases to perform substantially every material part of any occupation, business, or profession, he might be able to engage in, then he was totally disabled within the meaning of the policy. Defendant insists that the instruction is contradictory in that it tells the jury in effect that plaintiff was totally disabled if he was unable to follow or engage in any occupation, business, or profession, he was able to follow or engage in, or, in other words, if he was unable to perform what he was able to perform. Taking the instruction literally, it may be subject to this criticism, but we think the jury, reading the instruction in connection with in-

struction No. 1, must have understood its meaning to be that plaintiff was totally disabled if he was unable by reason of his ailments and diseases to perform substantially every material part of any occupation, business, or profession, he might be able to follow or engage in but for his disabling ailments and diseases.

Defendant further complains of the instruction for that the second clause thereof tells the jury that plaintiff was totally disabled if his ailments and diseases were such that common care and prudence would require him to desist from the pursuit of his occupation, business, or profession. Defendant says this is erroneous because total disability under the policy is not based on plaintiff's inability to pursue his occupation, business, or profession, but on his inability to pursue any occupation, business, or profession. The clause standing alone may be subject to this criticism, but, reading it in connection with the subsequent and concluding clause of the instruction, and along with instruction No. 1, we do not think it could have misled the jury.

Defendant further complains that the verdict is excessive. We think the complaint is well made. The policy provision is that the company will commence to pay the monthly installments six months after the receipt of due proof at the home office of the company. The undisputed evidence shows that due proof was received at the home office on June 6, 1932, and there is no showing, or contention, that the proof was received at an earlier date. The record shows that this action was commenced on August 26, 1933. Plaintiff, therefore, is entitled to recover in this suit only nine installments of $43.59 each, aggregating $392.31. There is no ambiguity in the policy provision. It clearly postpones the commencement of the payment of the monthly installments for a period of six months after the receipt of due proof. It must be given effect according to its plain and unambiguous terms. [Hundley v. Metropolitan Life Ins. Co. (N. C.), 172 S. E. 361; Penn. Mutual Life Ins. Co. v. Milton (Ga.), 127 S. E. 799; New York Life Ins. Co. v. Farrell (Ark.), 63 S. W. (2d) 520; Atlas Life Ins. Co. v. Wells (Ark.), 63 S. W. (2d) 533; Bergholm v. Peoria Life Ins. Co., 284 U. S. 489.]

Plaintiff relies on Hablutzel v. Home Life Insurance Company (Mo.), 59 S. W. (2d) 639, id. (Mo. App.), 52 S. W. (2d) 480. The policy provision under decision in that case is very different from the provision with which we are concerned here. In that case the policy provided that if the insured should furnish due proof that he had become totally and permanently disabled the company would waive the payment of premium which might "thereafter fall due." There was an ambiguity in this provision which was resolved in favor of the insured. It was held that the provision meant that the company would waive premiums falling due after the commencement of disability rather than after the furnishing of due proof. There is no

such ambiguity in the policy provision under review here, wherein it is plainly stipulated that the company will commence to pay monthly installments six months after receipt of due proof. It was just in this respect that the Hablutzel case was distinguished from the Bergholm case.

The Commissioner recommends that, if plaintiff will within ten days remit the sum of $261.54 the judgment of the circuit court be reversed and the cause remanded, with directions that a new judgment be entered in favor of plaintiff and against defendant in the sum of $392.31, with interest at the rate of six per cent per annum from March 26, 1934, the date of the original judgment; that, otherwise the judgment be reversed and the cause remanded for a new trial.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed and the cause remanded, with directions as recommended by the Commissioner, provided the plaintiff enters a *remittitur* of $261.54 within ten days; otherwise, the judgment is reversed and the cause remanded for a new trial. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.