## MARCH, 1939.

ALEX G. FEINBERG, RESPONDENT, v. NEW YORK LIFE INS. CO., APPELLANT.—127 S. W. (2d) 82.

Kansas City Court of Appeals. March 6, 1939.

Richard S. Righter and Sam D. Parker for appellant.

Louis H. Cooke and Lathrop, Crane, Reynolds, Sawyer & Mersereau of Counsel.

*Joseph Koralchik, Daniel L. Brenner* and *Phineas Rosenberg* for appellee.

*Rosenberg & Brenner,* of Counsel.

KEMP, J.—This is an action at law in which plaintiff, as the insured, seeks to recover from defendant, under the terms of a policy of life insurance, two annual disability benefits and also two annual premiums which plaintiff paid but which he claims were waived under the terms of said policy of insurance. A jury was waived and the trial court rendered judgment in favor of the plaintiff for $2738.20, which was the full amount sued for. From said judgment defendant has prosecuted this appeal.

Under date of February 24, 1920, defendant issued to plaintiff its policy of life insurance, whereby it agreed to pay to the beneficiary therein named, upon the death of the insured, the principal sum of $10,000. Said policy also contained the following provisions with

reference to the payments of annual disability benefits and the waiver of premiums, to-wit:

"Section 1—Total and Permanent Disability Benefits. Whenever the Company receives due proof, before default in the payment of premium, that the Insured, before the anniversary of the Policy on which the Insured's age at nearest birthday is 60 years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days—the permanent loss of the sight of both eyes, or the severance of both hands or of both feet, or of one entire hand and one entire foot, to be considered a total and permanent disability without prejudice to other causes of disability—then.

"1. Waiver of Premium.—Commencing wtih the anniversary of the Policy next succeeding *the receipt of such proof,* the Company will on each anniversary waive payment of the premium for the ensuing insurance year, and, in any settlement of the Policy, the Company will not deduct the premiums so waived. The loan and surrender values provided for under Sections 3 and 4 shall be calculated on the basis employed in said sections, the same as if the waived premiums had been paid as they became due.

"2. Life Income to Insured.—One year after the anniversary of the Policy next succeeding the receipt of such proof, the Company will pay the Insured a sum equal to one-tenth of the face of the Policy and a like sum on each anniversary thereafter during the lifetime and continued disability of the Insured. Such income payments shall not reduce the sum payable in any settlement of the Policy. The Policy must be returned to the Company for indorsement thereon of each income payment. If there be any indebtedness on the policy, the interest thereon may be deducted from each income payment."

Plaintiff, in his petition, alleged the issuance of the policy and the provisions thereof with reference to the waiver of premiums and the payment of disability benefits, and that *"on or about January 1, 1935,* and while said policy was in full force and effect, and while the plaintiff was of the age of forty-four years, and prior to the time the plaintiff reached the age of sixty years, the said plaintiff became wholly disabled by a bodily injury or disease so that he was thereafter and will be permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit; that the said permanent and total disability of plaintiff *has continued without interruption from the said first day of January, 1935;* that the plaintiff has performed all of the terms and conditions of said

contract of insurance on his part, and has furnished to defendant all proofs required by it, but defendant . . . has failed and refused to pay to plaintiff the indemnity due him for said disability."

The petition further alleged that the defendant is indebted to the plaintiff for said disability benefits in the sum of $2000, $1000 of which became due on the 17th day of February, 1936, and $1000 on the 17th day of February, 1937, and that defendant is further indebted to plaintiff, on account of the provisions for waiver of premiums, in the sum of $738.20, representing the two premiums which became due and were paid by plaintiff, respectively, on February 17, 1935, and February 17, 1936, the same being the premium dates next following the date when plaintiff became totally and permanently disabled. Following the overruling of defendant's demurrer to the petition and its motion to make the petition more definite and certain, defendant filed its amended answer, pleading, first, a general denial and, second, that plaintiff did not submit due proof, or any proof, to the company of disability under said policy until the 23rd day of February, 1937, and that "receipt of such due proof of disability is a condition precedent to the right of the insured to be entitled to a waiver of the premiums due under said policy and to the right of the insured to receive the above-mentioned disability benefits; . . . that the disability benefits and premiums paid by the plaintiff which plaintiff seeks to recover are benefits for a period prior to the date of the receipt of such proof or for benefits alleged by plaintiff to have accrued and become due before said benefits did accrue and become due under the terms and provisions of said policy."

Further facts pertinent to the issues presented in this appeal will be set out in the course of the opinion.

At the outset, plaintiff challenges the sufficiency of defendant's assignments of error, contending they are insufficient to present anything to this court for review. Plaintiff devotes a single short paragraph to support of this contention, which is as follows: "None of defendant's assignments of error point out where, in the record, the asserted error may be found and this defendant herein has failed to present adequate specifications of error which warrant this court's refusal to consider any of said alleged assignments, since it thereby becomes necessary for this court to examine the entire record in order to locate the error complained of." [Citing cases.]

An examination of defendant's brief discloses that there is no basis for this contention. If, indeed, the assignments of error under that specific head is in anywise subject to this criticism, defendant has under its Points and Authorities adequately set out in particularity the errors of which it complains. Under such circumstances, the assignments of error are deemed sufficient. [Schell v. Ransom Coal & Grain Co., 79 S. W. (2d) 543, l. c. 545.]

Under its first point, defendant complains of the refusal of a declaration of law in the nature of a demurrer to the evidence, stating in particularity the grounds on which it claims said demurrer should have been sustained. While it is true that there are no page references in the assignment itself, the very nature of the assignment requires an examination of the entire record. [Christianson v. Metropolitan Life Ins. Co., 102 S. W. (2d) 682, l. c. 684.] While, as to the other assignments, page references are not included within the assignments themselves, the brief in the course of the development of the respective points, contains frequent page references to the record, and the court is thereby enabled, without undue burden, to pass upon the respective issues thereby presented.

Defendant first contends that its demurrer to the evidence should have been sustained because plaintiff's evidence shows that due proof of plaintiff's disability was not received by the defendant until February, 1937, and that under the plain, unambiguous terms of the policy the plaintiff is only entitled to a waiver of those premiums and to the receipt of those disability benefits which fall due during his disability, as defined in the policy, *after receipt by the defendant of due proof of disability.*

Defendant urges as an authority of this contention, the case of Bergholm v. Peoria Life Ins. Co., 52 S. Ct. 230, 284 U. S. 489, which case we shall hereafter discuss.

In defense of his judgment, plaintiff, on the contrary, contends that under the terms of the policy, when construed most favorably to the insured, (1) that after due proof is made, and regardless of the date on which it is made, plaintiff is entitled to the disability benefits provided in the policy commencing with the date of disability and, likewise, is entitled to the waiver of all premiums commencing with the first premium that becomes due following the commencement of said disability, and (2) that defendant received "due proof" of disability, required by the policy, in 1935.

In support of his first contention, plaintiff seems to rely principally upon the cases of Minneapolis Mutual Life Ins. Co. v. Marshall, 29 Fed. (2d) 977, and Hablutzel v. Home Life Ins. Co. of N. Y., 52 S. W. (2d) 480 (St. L. Ct. App. and affirmed on *certiorari* by the Missouri Supreme Court in 59 S. W. (2d) 639).

Although the results reached in the *Marshall* and the *Hablutzel* cases, *supra,* are the same as that contended for by plaintiff here, we find upon examination that there is no conflict in reasoning between these two cases and the *Bergholm* case, *supra,* cited by defendant. The difference in results is due to a difference in the wording of the contract provisions in these respective cases.

In the *Bergholm* case, there was a verdict in favor of the plaintiff on account of specified disability benefits provided in the policy.

Upon appeal to the Circuit Court of Appeals, the judgment was reversed. The Supreme Court of the United States granted *certiorari* on the basis of a contended conflict with the case of Minneapolis Mutual Life Ins. Co. v. Marshall, *supra*. The Supreme Court, in sustaining the action of the Circuit Court of Appeals, reconciled the reasoning in the two cases by pointing out the distinction in the wording of the respective provisions and conditions upon which disability benefits would be paid. In the *Bergholm* case, the policy provided that "if any premium is not paid on the date when due, this policy shall cease and determine, except as hereinafter provided." The income disability clause which follows this language is as follows:

" 'Upon receipt by the Company of satisfactory proof that the Insured is totally and permanently disabled as hereafter defined, the Company will

" '1. Pay for the Insured all premiums becoming due hereon *after the receipt of such proof and during the continuance* of the total and permanent disability of the Insured and will also

" '2. Pay to the Insured a Monthly Income for life of 1% of this Policy; the first payment of such income to be paid immediately upon receipt of such proof. . . .

" '3. . . . To entitle the Insured to the above Total and Permanent Disability Benefits this policy at the time of making claim for such benefits must be in full force and all premiums becoming due prior to the time of making claim must have been duly paid. . . .' "

The insured died on *April 18, 1929,* and judgment was sought for disability benefits from December 1, 1927, to April 1, 1929. The last premium paid was due on May 27, 1927. The last premium due, allowing the grace period, should have been paid not later than September 27, 1927. There was evidence in the record which would support a finding that the insured was totally and permanently disabled from a period prior to the date on which the September premium became in arrears, and that this condition of disability continued until the death of the insured. The petitioner therein contended that the fact of the commencement of the total disability prior to the time of default in premium payments brought into effect the promise of the company to pay premiums which became due after the disability began and cited in support thereof, Minneapolis Mutual Life Insurance Co. v. Marshall, *supra*.

Analyzing the provisions with respect to disability payments in the *Marshall* case, and distinguishing them from the provisions in the *Bergholm* case there under review, the Supreme Court said:

"The pertinent provisions of the policy there, however, differ from those found in the policy here under consideration. There the policy

provided that if the insured, while the policy is in force and before default in payment of premiums, 'shall become totally and permanently disabled . . . and shall furnish satisfactory proof thereof, the Company will waive the payment of premiums thereafter becoming due,' and that 'upon the receipt of due proof of total and permanent disabilities . . . the Company will waive the payment of all premiums thereafter becoming due.' The court held that the waiver took effect at the time of the disability, and did not depend upon the time when proof thereof was furnished.

"We do not need to controvert this construction of the words quoted, or question the soundness of the view of the court that the existence of the disability before the premium became in arrears, standing alone, was enough to create the waiver. In that view, the obligation to furnish proof was no part of the condition precedent to the waiver; but such proof might be furnished within a reasonable time thereafter. *Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of proof of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums becoming due after the receipt of such proof. The provision to that effect is wholly free from the ambiguity which the court thought existed in the Marshall policy.* [Compare Brams v. New York Life Ins. Co., 299 Pa. 11, 14, 148 A. 855.] It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. [Citing Cases.] This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meaning.

"Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense. . . . And to discharge the insured from the legal consequences of a failure to comply with an explicitly stipulated requirement of the policy, constituting a condition precedent to the granting of such relief by the insurer, would be to vary the plain terms of a contract in utter disregard of long-settled principles."

The result arrived at in the *Marshall* case, *supra,* was grounded upon the fact that the language defining the conditions upon which the liability for disability benefits would arise was ambiguous, in that the word "thereafter" in the language "the Company will waive the payment of premiums *thereafter* becoming due" might refer back either to the language concerning plaintiff's becoming totally dis-

abled or to the language concerning the furnishing of proof. The court held that in the case of such an ambiguity the construction most favorable to the insured should be adopted.

In the *Hablutzel* case, this canon of construction was approved by the United States Supreme Court, but it was there held that the language of that policy was not ambiguous and clearly made "the receipt of such proof" by the insurance company a condition precedent to the commencement of liability for disability benefits.

Plaintiff's contention is that the language in the instant case is ambiguous and, therefore, the *Marshall* case (which has been followed in this State) should be controlling. In this contention we cannot agree. Examining the language in the instant case, it seems to us to be clear and unequivocal. Here the policy provides, with reference to waiver of premium, that "commencing with the anniversary of the policy next succeeding *the receipt of such proof,* the company will on each anniversary waive payment of the premium" for the ensuing insurance year. This language is certainly as clear as the language in the *Bergholm* case, wherein the policy provided that the company will "pay for the insured all premiums becoming due hereon *after the receipt of such proof* and during the continuance of the . . . disability, etc." It seems to us that the only reasonable interpretation of this language is that the waiver of the premium is to commence on the next premium due-date after the *receipt* of "due proof" of the disability, and not from the date of the commencement of the total disability.

The case of Hablutzel v. Home Life Ins. Co., *supra,* on which plaintiff relies, is distinguishable from the case at bar on precisely the same ground as the United States Supreme Court distinguished the language of the policy in the *Marshall* case from the language of the policy in the *Bergholm* case. In the *Hablutzel* case, the policy contained the following provision:

"If, after one full annual premium shall have been paid hereon and before default in the payment of any subsequent premium, the insured shall, before attaining the age of sixty years, furnish due proof to the company that he has become totally disabled . . .' *the company by endorsement hereon shall agree to waive the payment of the premiums which may thereafter fall due during the continuance of* such disability." (Italics ours.)

The court, after discussing at length the cases of Minneapolis Mutual Life Ins. Co. v. Marshall, *supra,* and Bergholm v. Peoria Life Ins. Co., *supra,* said, l. c. 483:

"The fundamental distinction between the policy provision under review in the Bergholm case and the provisions under review in the Marshall case, *and in the present case,* is this: In the Bergholm case, the agreement is that; upon receipt by the company of satisfactory

proof that the insured is, totally and permanently disabled, the company will waive all premiums becoming due after receipt of such proof; whereas, in the Marshall case, as in the present case, the agreement is that, if the insured shall furnish due proof that he has become totally and permanently disabled, the company will waive the payment of premiums thereafter becoming due. Does this provision mean that the company will waive premiums becoming due after the insured has furnished proof, or after he has become disabled? We construe it to mean that the company will waive premiums becoming due after the insured has become disabled, because this construction is more favorable to the insured, and more in consonance with the purpose of the provision, which is to give protection to the insured against disability. *If it was the intention to waive only the premiums becoming due after the furnishing of proof, it would have been an easy matter for the company, who wrote the policy, to have said so in plain words, as was done in the Bergholm policy.* It is significant that the Supreme Court, in construing the provision in the Bergholm policy, emphasizes the clause, 'becoming due after the receipt of such proof,' and adds that this relieves the provision from the ambiguity existing in the Marshall policy."

By the use of the words in the policy in the instant case—"commencing with the anniversary of the premium next succeeding such proof"—the insurance company, in our opinion, clearly stated its intention "to waive only the premiums becoming due after the furnishing of proof." In fact, this language seems even more definite on this point than the language in the *Bergholm* case which was there held to be unambiguous. The distinction between the language of the policy in the instant case and that in the *Hablutzel* case is quite as clear as the distinction between the lanaguage of the policy in the *Hablutzel* case and the language of the policy in the *Bergholm* case.

In Moss v. Metropolitan Life Ins. Co., 84 S. W. (2d) 395, the St. Louis Court of Appeals had under consideration the following provision of an insurance policy, to-wit:

"Upon receipt . . . of due proof that any employee . . . has become totally and permanently disabled . . . the company will waive the payment of further premiums as to such employee and six months after receipt of such proof, will commence to pay . . . . monthly installments as defined below . . ."

In construing this language, the court followed the case of Bergholm v. Peoria Life Ins. Co., *supra,* and distinguished the policy provision above quoted from the policy provision in the Hablutzel v. Home Life Ins. Co. case, *supra* (and opinion by the same court). In construing the policy provision above quoted, the court said, (l. c. 399):

"Plaintiff relies on Hablutzel v. Home Life Insurance Company, 332 Mo. 920, 59 S. W. (2d) 639; Id. (Mo. App.), 52 S. W. (2d) 480. The policy provision under decision in that case is very different from the provision with which we are concerned here. *In that case the policy provided that if the insured should furnish due proof that he had become totally and permanently disabled the company would waive the payment of premiums which might 'thereafter fall due.' There was an ambiguity in this provision which was resolved in favor of the insured.* It was held that the provision meant that the company would waive premiums falling due after the commencement of disability rather than after the furnishing of due proof. *There is no such ambiguity in the policy provision under review here, wherein it is plainly stipulated that the company will commence to pay monthly installments six months after receipt of due proof. It was just in this respect that the Hablutzel case was distinguished from the Bergholm case.*" (Italics ours.)

To the same effect is the ruling in the case of Grafe v. Fidelity Mutual Life Ins. Co. (Mo. App.), 84 S. W. (2d) 400. In that case, Section 6 of the policy provided:

"Upon receipt by the company at its head office of due proof that the insured became totally and presumably permanently disabled after the insurance under this policy became effective, the company will allow disability benefits upon the terms and conditions hereinafter set forth in this section."

Plaintiff made the same contention there as does the plaintiff in the case at bar. Quoting from the opinion (l. c. 404):

"Plaintiff contends that the policies cover the entire period of disability both as to the waiver of premiums and disability income without regard to the time of furnishing proofs of disability. That this contention is untenable becomes obvious from a mere perusal of the provisions of section 6 of the policies. These provisions are unambiguous. They clearly show that the agreement is that defendant will waive premiums which become due after receipt of the proofs and will pay a disability income as of the date of the receipt of the proofs and monthly thereafter during the continuance of the disability or until death or the maturity of the policies."

From a careful examination of the provisions with reference to disability benefits and waiver of premiums in the respective cases hereinabove discussed, we are impelled to the conclusion that the *Moss* case, *supra*, and the *Bergholm* case, *supra*, should be controlling upon this point in the case here under review.

We, therefore, hold that the language of the policy in the instant case, both with respect to waiver of premiums and the payment of disability benefits, is clear and unambiguous and that receipt by the company of due proof of the disability is a condition precedent (ra-

ther than a condition subsequent, as contended by plaintiff) to the obligation of the company to waive premiums and to pay disability benefits.

Plaintiff makes the further contention that the defendant received due proof of his disability in January, 1935, while it is defendant's contention that due proof of disability was not received by the company until February, 1937. ᵀPlaintiff bases his contention upon the fact that in January, 1935, one S. G. Toub, a solicitor of insurance for the defendant company was informed of the fact of plaintiff's disability and agreed to look after plaintiff's interests with respect to the disability provisions of the policy of insurance. Defendant, on the other hand, contends that under the express terms of the policy no ''due proof'' of total disability could have been made in January, 1935, inasmuch as plaintiff claimed that his total disability began on January 1, 1935, and the sixty days of continued disability as provided in the policy had not then expired. Defendant further contends that Toub was merely an insurance salesman and had no authority, either actual or implied, to receive ''due proof'' of disability or to waive any requirements of the policy with respect thereto. The facts pertinent to these issues are as follows:

Plaintiff was the proprietor of the Feinberg Kosher Sausage Company until he sold the business on March 20, 1937. On a Sunday morning in the latter part of January, 1935, S. G. Toub, employed by defendant company as an insurance salesman or solicitor, called at plaintiff's place of business. Plaintiff was not there at the time but his wife Anna, who assisted plaintiff in the business, was present. As to a conversation between Mrs. Feinberg and Mr. Toub on this occasion, Mrs. Feinberg testified as follows:

''. . . He (Toub) came in and said 'Where is Al?' or 'How is Al?' I said 'Well, he is very sick.' He said 'Do you know Al has a total disability?' I said 'What do you mean?' He said 'He has a policy that carries a total disability clause.' He said 'Shall I file claim? I think he is entitled to it.' I said 'Yes, go ahead.' And he said 'All right, I will file claim tomorrow.' ''

Mrs. Feinberg further testified that Toub came in a week later, at which time she asked him if he had filed the claim for total disability, and he said ''Yes, I am taking care of it for you, Anna; don't worry; I will take care of it for you.''

''Q. Did you have some further conversation with him after the second conversation? A. Not particularly as to the total disability. He came in occasionally, once or twice a week, and I would just talk with him different things, but nothing referring to this. And when a premium was going to be due on his insurance he would say to be sure and take care of it and tell me when it will be due. . . .

''Q. Did you have any conversation with Mr. Toub in 1936? A. Yes.

"Q. About when? A. Well, it was, I believe, in February when I knew this should have been paid, he came in, and I said 'How about that insurance claim for total disability?' He said 'Well, the company is investigating; it will take some time; but don't you worry.'

"Q. Did you ever have any other conversation with Mr. Toub about this physical disability? A. Numerous times I asked him when he came in."

Witness Frank, who testified on behalf of plaintiff, overheard the conversation above referred to, in January, 1935, and testified he overheard a second conversation between these parties with reference to the same matter a few months later, and that he overheard a third conversation between these parties about the first of February, 1936, with respect to plaintiff's disability claim. Aside from other supporting testimony as to certain of these conversations, this evidence (aside from the evidence as to the scope of the authority of Toub) includes all of the facts upon which plaintiff contends that he furnished due proof of his disability prior to February 17, 1935, which was the premium due-date next following the commencement of plaintiff's claimed disability on January 1, 1935.

In the latter part of December, 1936, the principal office of the defendant company at Kansas City received for the first time, from S. G. Toub, information that the insured wanted to file a claim for disability. The company thereupon referred the matter to its *inspection department*, and on December 22, 1936, directed one of its inspectors, Mr. Charles L. Waterbury, to deliver the necessary forms to plaintiff. Shortly thereafter, pursuant to these instructions, Mr. Waterbury delivered two forms consisting of "Insured's Statement" and "Attending Physician's Report" to plaintiff. The "Insured's Statement," signed by plaintiff and dated February 18, 1937, and the "Attending Physician's Report," signed by Dr. Irwig and dated February 19, 1937, were forwarded to the company by plaintiff's attorneys in their letter of February 20, 1937. The "Insured's Statement," over his own signature, disclosed that *the date from which he claimed his disability* preventing him from engaging in any occupation for remuneration or profit, was *January 1, 1935*, and that the first physician which he consulted at the beginning of this illness was Dr. Allen L. Hearst, whom he consulted in January, 1935. The statement further disclosed that, in addition to Dr. Hearst, he had consulted Dr. Lindsay S. Milne, from August, 1935, to February, 1937, and Dr. Fred Irwig from May, 1936, to February, 1937, and Dr. A. Morris Ginsberg from May 2, 1936, to February, 1937.

On February 24th, defendant replied to this letter stating that, in addition to the statement of Dr. Irwig, it would require statements

from Dr. Hearst and Dr. Milne. On March 8th, defendant received supplemental statements, one from Dr. Hearst, which was signed by him and dated March 7, 1937, and a statement signed by Dr. Milne and dated March 1, 1937. The defendant company approved the insured's claim and agreed to waive premiums beginning February 17, 1937, and agreed to pay disability benefits commencing with the anniversary year of February 17, 1937, stating that the first income payment thereunder would be due in February, 1938.

It was established by substantial evidence that plaintiff was able to do no remunerative work from *January 1, 1935, on which date he alleged both in his petition and in his signed statement of claim, that his disability began.* In this connection it may be observed that there was evidence to the effect that some time prior to 1935, the plaintiff was ill and that in September and December, 1934, he was a patient in two different hospitals. We cannot see, however, how this evidence can have any bearing on the issues presented in this case inasmuch as plaintiff makes no contention, either in his petition or in his written statement of claim submitted to the insurance company, that his total disability began prior to January 1, 1935.

Since the extent of Toub's authority, as an agent of defendant company, is raised in this appeal, we call attention to the evidence in respect thereto. Defendant offered in evidence the contract of employment between defendant company and Toub. Plaintiff contends that this contract is not properly before us on this appeal. Without passing upon this question at this time, and for the present totally disregarding said employment contract, Robert M. Wells testified on behalf of the defendant that he was an employee of the defendant at the Kansas City office, and that it was his duty to handle the correspondence between the policy-holder and the New York office regarding disability claims, and that he was the only person in the Kansas City office charged with this duty. He testified that Toub was employed by the defendant company as a "soliciting agent, selling life insurance," and that "he sells life insurance only," and that he knew of no other authority or duty of the said Toub other than the selling of life insurance. He testified that Toub sometimes collected premiums and that, in the event of the death of the insured, he sometimes took out the *death claim papers,* but that he never delivered papers *to the insured in case of disability claims*; that it was upon information furnished by Toub that he submitted forms of proof to Feinberg; that it was customary for Toub to notify him of such disability claims. He stated that death claims and disability claims were handled on an entirely different basis; that "A person reporting a death claim, whether it be agent, or beneficiary, or a relative of the deceased, is given the death claim papers with instructions as to how to complete them. Whereas, on

a disability case, we take only oral information from the informant. It can be the insured, the agent, or anyone connected with the family of the insured. And our Claim Agent or some one from the Inspection Department is sent to call on the insured with the papers to be left with the insured." Toub was not in the Inspection Department, nor was he a claim agent of the company. Following his testimony that in the case of disability claims, the papers were never given to Toub for delivery to the insured, Wells stated that "The only forms we give Mr. Toub or any agent would be where there is more than one doctor consulted by the disabled person and sufficient forms were not left with that disabled person by our inspector when he called for the first time." That was what was done in the instant case. Mr. Waterbury, an employee of the defendant company in its Inspection Department, delivered to plaintiff two forms—one designated as "Insured's Statement" and the other "Attending Physician's Report." It was after these forms were filled out and sent in that defendant wrote to plaintiff's counsel, stating that, "Inasmuch as the company will require medical evidence of the insured's disability from the date he claims total disability, namely, January 1, 1935, we have asked our representative, Mr. S. G. Toub, to endeavor to obtain for us a statement from Dr. Allen L. Hearst and a statement from Dr. Lindsay S. Milne in regard to the insured's illness prior to the date on which he consulted Dr. Irwig, which was May 2, 1936, as stated on the form No. 2 (Attending Physician's Report). Any assistance you might give Mr. Toub in obtaining these forms will be appreciated by this office."

The only other evidence on the question of Mr. Toub's authority was the following testimony of Mrs. Feinberg:

"Q. What is Mr. Toub's business? A. He is an agent for the New York Life Insurance Company and collects premiums and files claims for them.

.   .   .   .

"Q. Now, Mrs. Feinberg, where did you get your information about that? A. Well, I know when my mother passed away he took care of the claim for my mother.

"Q. I am asking where you got your information that he collects premiums and files claims. Did he tell you that? A. No, but he comes in and I would get information that our premium was due.

"Q. I didn't hear you. A. He comes in and I would get information that our premium was due.

"Q. He would come in and tell you the premium was due? A. Yes, he would always remind us that the premium was due.

"Q. *Is that the only information you had, then, that he came in and told you when a premium was due, and he handled your mother's claim?* A. *Yes.*"

It should also be noted that, attached to the policy of insurance, is plaintiff's application therefor, in which appears, over plaintiff's signature, the following:

"I further agree as follows: . . . 3. That only the President, a Vice-President, a Second Vice-President, a Secretary or the Treasurer of the Company can make, modify or discharge contracts or waive any of the Company's rights or requirements, and that none of these acts can be done by the agent taking this application."

We believe this is all of the testimony bearing upon the question of Toub's authority to act for the company in respect to receiving due proof of disability or waiving requirements with respect thereto.

Under the provisions of the policy the agreement to waive premiums and to pay disability benefits becomes operative only—"Whenever the company receives due proof . . . that the insured . . . has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration of profit, *and that such disability has then existed for not less than 60 days* . . ."

In the light of this provision, it is clear that plaintiff's total disability must have existed for 60 days after the commencement thereof before there is any basis for the giving of due proof to the company. Regardless, therefore, of the question of the scope of the authority of the agent Toub to receive due proof on behalf of the company, it must be apparent that the conversation between plaintiff's wife and Toub in January, 1935, wherein, in reply to Toub's question, "How is Al?," Mrs. Feinberg replied, "Well, he is very sick," cannot be held to be due proof under any possible theory.

Plaintiff alleged the commencement of his disability as January 1, 1935, and, under the provisions of the policy, due proof of said disability could not be made until after the disability had "existed for not less than 60 days." This would seem too clear to require citation of authority. However, we call attention to the case of Corbett v. Phoenix Mutual Life Ins. Co., 259 N. Y. Supp. 221. In this case the policy provided that the presumption of permanent disability should arise after the continuous existence of total disability for a 6-months' period. The Court there held that:

". . . Plaintiff could not submit proofs to the company that he was suffering from a presumably total and permanent disability until six months had expired from July 18, 1931 (the date of the commencement of his total disability). The earliest time when plaintiff could make his claim was on January 18, 1932."

In the instant case the earliest date on which due proof could have been made to the company was March 2, 1935 (sixty days after commencement of disability on January 1, 1935). The policy provided

that provisions with reference to waiver of premiums and the payment of disability benefits would become operative at "the anniversary of the policy next succeeding the receipt of such proof." The first anniversary of the policy next succeeding the first possible receipt of due proof would be February 17, 1936. Thus, regardless of the question of the scope of the authority of defendant's agent Toub, the obligation of defendant to waive premiums and to pay disability benefits to plaintiff could not arise prior to February 17, 1936.

There is, however, evidence that plaintiff's wife had further conversations with Toub at dates subsequent to March 2, 1935, in which she inquired of Toub about the disability benefits and that Toub gave her assurance that the matter was being taken care of.

This necessitates our passing upon the question as to whether or not plaintiff, subsequent to March 2, 1935, and prior to February 17, 1936, met the requirements of the policy with reference to furnishing defendant with due proofs of his disability. The evidence shows that on a number of occasions within this period, and particularly a few months subsequent to Mrs. Feinberg's first conversation with Mr. Toub, and again in the first part of February, 1936, she renewed the notice to Toub of plaintiff's disability. While it does not appear that she again recited any particular facts with reference to it, her inquiring of Toub as to the status of plaintiff's claim for disability benefits of necessity involved reference to the conversation she had with Toub in January, 1935, wherein she related that he was a very sick man. From these conversations, there is the further inescapable inference that Toub was advised or knew of the continuing disability of the plaintiff, and on each occasion gave assurance to plaintiff's wife that the matter was being taken care of; that the company had to have time to investigate, etc.

It also appears from the record that Toub ordinarily handled disability claims arising under policies written by him, to the extent of reporting same to the company. Regardless of any limitations upon his authority to the contrary, the admission by defendant that this practice existed affords a sufficient basis for the holding by the trial court (sitting as a jury) that Toub was duly authorized by the defendant to receive such notices. The trial court having found this issue in favor of plaintiff, it follows that the defendant must be charged with receipt of the notice of plaintiff's disability and with knowledge of the fact that he was making claim for disability benefits and waiver of premiums under the terms of the policy. The defendant, constructively at least, was so notified on at least two occasions between March 2, 1935, and the next policy anniversary. which was February 17, 1936.

It further appears from the testimony of Mr. Wells (an agent of defendant testifying on its behalf) that upon receipt of the notice

of claimed disability, it is the custom of the defendant to submit claim papers in the nature of questionnaires to the insured and to his attending physicians. Furthermore, we believe it may fairly be said that it is a matter of common knowledge that this is the practice of insurance companies generally. It should be noted that the policy requiring "due proof" does not specify precisely what is required of the insured to do in order to comply with this requirement. In view of the practice above referred to, it would be unnecessary to include any such specifications within the policy provisions.

After receipt of the notice, the insurance company is entitled to have from the insured such information as is reasonably necessary for it to determine whether or not a condition exists which gives rise to its obligation under the disability provisions of a policy. The insurance contract providing for "due proof" means just this. It seems to us that, in view of this admitted practice, an insurance company, upon receipt of notice of disability, is under a duty to advise the insured as to information or proof that it requires as to his claimed disability, and that if it fails so to do within a reasonable time it cannot, by virtue of such failure, escape its obligation to waive premiums and pay disability benefits on the ground that the insured has failed to furnish "due proof."

In the case of Hablutzel v. Home Life Ins. Co., 52 S. W. (2d) 480, l. c. 484, plaintiff, under a clause providing for the waiver of premiums following disability, sought to recover premiums paid by him during the period of disability. It appeared that neither the plaintiff nor his wife knew of this provision of the policy. Upon plaintiff's disability he was unable to meet the last premium due on his policy. His wife went to the defendant company's office and talked to the local cashier about an extension of time for the payment of premiums and was told that the company would allow an extension during the thirty days of grace (which the plaintiff was entitled to under the terms of the policy). In the course of the conversation, plaintiff told the cashier that the plaintiff was permanently disabled and that the doctor did not expect him to live. It was plaintiff's contention that this conversation constituted due proof. In passing upon the question as to whether or not this conversation between plaintiff's wife and defendant's cashier constituted due proof, the court said:

"In this case, the plaintiff's wife, and his daughter, too, informed the defendant's agent that the plaintiff was totally and permanently disabled, and that the doctors had so advised. This information was given to the agent who collected the premiums on the policy, including an extra premium charged for protection against disability, *and whose duty it was to receive information of disability, and take the preliminary steps for the allowance of disability claims.* It is

true the plaintiff did not make claim for a waiver of the premiums, but he did ask for an extension of the time for the payment of the premiums, and was told that the company would gladly allow an extension during the thirty days of grace he was already entitled to under the policy. The extension of time was asked for on the express ground that the insured had become totally and permanently disabled, and was therefore unable to meet the payments. Defendant was thus put in possession of all of the facts essential to make out a *prima facie* case requiring a waiver of the premiums. Yet, because the plaintiff, through ignorance of his right to such waiver, failed to claim such waiver, defendant, with knowledge of the plaintiff's right to such waiver, and with knowledge of the plaintiff's ignorance of such right, continued to collect the premiums, and contends now, not only that it is entitled to retain the premiums so collected, but that plaintiff, in his present disabled and helpless condition, must continue to pay the premiums until his death, or forfeit his insurance. We are unwilling to so hold. We think the statement of the facts concerning the plaintiff's disability, made to the defendant's agent, should be regarded, under the circumstances, as due proof. But if it may not be so regarded, surely, at least, defendant must be held to have waived due proof.''

Upon *certiorari* to the Supreme Court, this decision of the St. Louis Court of Appeals was sustained. [Hablutzel v. Home Life Ins. Co., 59 S. W. (2d) 639.]

Defendants urge as an authority for their contention the case of Jacoby v. New York Life Ins. Co., 77 S. W. (2d) 840. The *Jacoby* case is not in conflict either with the *Hablutzel* case or with the views which we have herein expressed. In the *Jacoby* case, the policy required that disability benefits should become effective upon the receipt *at the company's home office* of due proof of the insured's disability. The insured procured forms at the company's branch office at Kansas City and he left some papers with the defendant's local agent at Kansas City, which he claimed constituted ''due proof'' furnished by him. The home office took the position that from the information contained in these papers it did not appear that the insured had been totally disabled within the contemplation of the policy provisions and the insured was advised that the company would be pleased to consider such evidence of total disability as he might furnish it. It does not appear just what information was furnished in this paper. The court points out that from the language of defendant's letters so advising plaintiff, ''it sufficiently appears that defendant did not deny, but only refused to approve the claim and acknowledge liability upon the evidence furnished and the information obtained because they did not show total disability upon

plaintiff's part and advised plaintiff that, if he would submit to it such evidence of 'total disability,' it would further consider it."

The question there was as to what constitutes due proof. That being the question, the court undertook to distinguish between mere notice and due proof. A similar situation would be presented in the instant case had the defendant questioned the sufficiency of the information which plaintiff furnished in February, 1937, promptly upon receipt from the company of its forms consisting of "Insured's Statement" and "Attending Physician's Report." In this case the proofs on the company's forms, when received by the company, were found satisfactory and the company admitted its liability based upon the date of receipt of same.

We hold in this case, as was held in the case of Hablutzel v. Home Life Ins. Co., *supra,* that, if the statement of facts concerning the plaintiff's disability, made to the defendant's agent, should not be regarded as due proof, then "surely, at least defendant must be held to have waived due proof," at least for the period between the time when the notice was given to defendant's agent subsequent to March 2, 1935, and the time defendant submitted forms of proof to be filled out by plaintiff and his attending physicians. It follows, therefore, that plaintiff is entitled to a waiver of the premium due on February 17, 1936, or rather to recover the amount of the February 17, 1936, premium paid by him, and that the first annual payment of disability benefits was due to plaintiff on February 17, 1937, for the year commencing February 17, 1936, but is not entitled to the waiver of any prior premium, nor to the payment of any prior disability benefits.

In what we have heretofore said we have, in effect, passed upon the other assignments of error. Hence it is unnecessary to discuss them under the particular designated headings set out in defendant's brief.

The judgment is therefore reversed and remanded with directions to the trial court to enter up a new judgment in favor of plaintiff, in conformity with the views herein expressed. All concur.