**AETNA LIFE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, a Corporation, Plaintiff-Appellant,**

v.

**Edward D. DURWOOD, Defendant-Appellant.**

**No. 44280.**

Supreme Court of Missouri.

Division No. 1.

March 14, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied April 11, 1955.

Motion for Reconsideration of Motion for Rehearing or to Transfer to Court en Banc Denied May 9, 1955.

William B. Cozad, Randolph P. Rogers, Jr., William M. Symon, Jr., Morrison,

Hecker, Buck, Cozad & Rogers, Kansas City, for plaintiff.

Wm. G. Boatright, Kansas City, for defendant-appellant, Edward D. Durwood.

LAWRENCE HOLMAN, Special Judge.

Plaintiff, Aetna Life Insurance Company, filed this suit to obtain a declaratory judgment as to its rights and obligations under the permanent total disability provisions of five life insurance policies issued by plaintiff to and upon the life of defendant Edward D. Durwood. Defendant filed a cross-petition seeking to recover certain premiums he had paid and disability benefits which he alleged had accrued to him under the policies and penalties for plaintiff's vexatious refusal to pay. The trial court found all of the issues in favor of defendant, except the penalty and attorney fee for vexatious refusal to pay. The aggregate amount of the judgment for defendant upon all five counts of his cross-petition was $50,030.60. Each party has appealed.

Three of the policies, in the aggregate face amount of $25,000, were issued February 26, 1926, and provided for maturity at the end of 24 years. Each of the three policies contained this total permanent disability provision with respect to waiver of premiums and income disability benefits:

"If, before default in payment of premium and before the date of maturity of this policy, the insured becomes totally and permanently disabled by bodily injuries or disease and is thereby prevented from performing any work or conducting any business for compensation or profit, the following benefits will be available: A waiver of the payment of premiums falling due during such disability, and an income of ten dollars a month for each one thousand dollars of the original insurance payable to the life owner each month in advance during such disability and before the date of maturity of this policy.

"If the insured becomes totally disabled by bodily injuries or disease and is thereby prevented from performing any work or conducting any business for compensation or profit for a period of ninety consecutive days, then, if due proof has not been previously furnished that such disability is permanent, such disability shall be presumed to be permanent. In such a case, benefits shall accrue from the expiration of the said ninety days, but not from a date more than six months prior to the date that due proof of such disability is received by the Company at its Home Office. No benefit shall accrue prior to the expiration of said ninety days unless during that period due proof is received by the Company at its Home Office while the insured is living that the total disability will be permanent, in which event benefits will accrue from the commencement of disability."

These policies will be hereafter referred to as the "three policies."

Policy No. P624818, in the face amount of $20,000, was issued on May 11, 1928. It had no maturity date prior to the death of the insured. It had a disability provision similar to the one heretofore set out which was made applicable only in the event disability occurred before the insured reached age 60. If it occurred after age 60, only the waiver of premium provision was applicable. Since the claimed disability in the instant case occurred after Mr. Durwood became 60 years of age, only the waiver of premium benefit is in issue as to this policy. That provision is that the "benefit shall accrue from the date evidence of such disability satisfactory to the company is received at its Home Office." This differs from the provision in the "three policies" in that it provides for satisfactory evidence rather than "due proof" of disability and it will be further noted that it contains no provision for benefits prior to receipt of such satisfactory evidence at the home office.

Policy No. N856608, in the face amount of $121,300, was issued June 21, 1930. It provided for maturity at the end of 20 years. This policy contained a provision for waiver of premiums in the event of total permanent

disability but had no disability income provision. Like the policy described in the preceding paragraph, it provided for "evidence satisfactory to the company" in lieu of the phrase, "due proof," as used in the "three policies."

At the outset, we have decided that the slight differences in the phraseology of the two policies last described and of the "three policies" is immaterial insofar as a determination of the issues in this case are concerned. Therefore, for the purposes of this decision, we will consider that the provisions relating to the accrual of disability benefits in the other two policies are, in legal effect, the same as provided in the "three policies" above quoted.

Defendant became totally disabled on February 11, 1946, when he suffered a heart attack, and within three months thereafter it was determined that such disability was permanent. Within that period, Dr. A. Morris Ginsberg, defendant's physician, came to that conclusion and so advised defendant. After spending six weeks in bed, defendant has since been able to be up much of the time and can occasionally leave his home. However, he has not been able to carry on his business affairs. Upon being advised of his condition, defendant retired from any active participation in business and turned over the control thereof to his son. In view of the evidence in this record, we think the trial court was correct in making the following finding of fact on this issue: "The court finds that defendant became totally and permanently disabled on February 11, 1946, by bodily injuries or disease, which prevented him from performing any work or conducting any business for compensation or profit, which total and permanent disability has continued uninterruptedly to the present time."

Plaintiff had no notice of defendant's condition until November 20, 1950. In the meantime, plaintiff continued to send defendant regular notices of the amount of the premiums upon his policies as they became due and defendant voluntarily paid said premiums.

In February, 1950, the "three policies" matured and plaintiff paid defendant $30,325, the amount which appeared to be due thereon, and defendant surrendered said policies to plaintiff for cancellation. Policy No. N856608 matured in June, 1950, and plaintiff paid defendant the full principal amount due, but defendant elected to return the money to plaintiff to be held at interest under a supplemental contract. This policy was also surrendered for cancellation. All of the policies had been in defendant's possession from date of issue until they matured.

Defendant testified that in November, 1950, an incident occurred which brought the Aetna policies to his mind and caused him to call the Kansas City office of the company and inquire whether the policies he had surrendered contained provisions for disability and waiver of premium benefits. Upon being advised that they did, he stated that he wanted to make a claim for such benefits. A short time later, he received a claim blank and on November 28, 1950, made a formal claim for disability benefits from February 11, 1946. Defendant testified that the reason he had not made a claim prior to this time was because he had completely forgotten about the disability benefit provisions. There was some medical evidence to the effect that his ability to remember might have been adversely affected by a diseased condition of his thyroid gland.

Plaintiff did not pay the claim and in December, 1951, filed this suit seeking an adjudication as to its liability. The proof was accepted by plaintiff for the waiver of premium benefit on Policy No. P624818 which had not matured. Defendant paid the premium that became due on May 11, 1951, after the claim had been filed. Plaintiff tendered a return of this premium but defendant refused to accept it, contending that he was entitled to a return of all premiums paid after February 11, 1946. Plaintiff in its petition renewed the offer to return this premium.

As we have previously indicated, defendant's answer and cross-petition, in five

counts, sought recovery for amounts alleged to be due from plaintiff on account of benefits accrued and premiums paid on each of the policies. In the first three counts, he alleged that he was entitled to recover disability benefits of $10 per month for each one thousand dollars of insurance and all premiums paid on the "three policies" from February 11, 1946, until February 1950, when those policies matured. In the fourth and fifth counts he prayed recovery for the amount of all premiums paid after February 11, 1946, on the other two policies. In each count, defendant also sought to recover interest from November 24, 1950, and ten per cent of the amount of the judgment as damages for vexatious refusal to pay the claim, plus a reasonable attorney fee. Evidence was presented to the effect that such a fee would be $7,500.

Plaintiff now contends that the trial court erred in rendering judgment for defendant for disability income and waiver of premium benefits upon the policies because such benefits accrued more than six months prior to the date that due proof of disability was received by plaintiff at its home office and hence were barred by the specific provisions of the policies requiring such proof as a condition precedent to the right to receive benefits. It is also argued that, under four of the policies, defendant's rights were released by virtue of the maturity, surrender and cancellation of those policies prior to receipt by plaintiff of notice or proof of disability. The third point briefed by plaintiff is that defendant cannot in any event recover the premiums paid because they were voluntarily paid during a period that he had possession of the policies and with full knowledge that his disability was total and permanent.

It is obvious that defendant appealed for the sole reason that the judgments did not include the penalty and attorney fee for vexatious refusal to pay. Otherwise, he seeks to uphold the judgment by asserting that the policies made no requirement that proof be filed within any specified time and that therefore proof could be submitted at any time within the period provided in the applicable statute of limitations and recovery had for disability benefits and premiums paid from the date of actual, total and permanent disability, February 11, 1946.

Since there is no serious dispute about the facts in the case, it would appear that our decision will require a determination of the meaning of the disability provisions in these policies in the light of the facts herein.

In approaching this task, we deem it advisable to keep before us certain established rules that may be applicable. "In the construction of the policy, the rules to be followed are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, in so far as open to different constructions, that most favorable to the insured must be adopted. State ex rel. Security Mutual Life Ins. Co. v. Allen, 305 Mo. 607, 614 et seq., 267 S.W. 379, 381, 382. However, as said in 14 R.C.L., § 103, p. 931, the rule 'does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.'" Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, loc. cit. 101, 57 A.L.R. 615.

We fail to find any ambiguity in the disability provisions of the policies before us. The words and phrases thereof, when considered as a whole, need only to be given their plain and usual meaning in order to determine the requirements for recovery of disability benefits.

There are two elements required to make up the type of disability with which we are now concerned. It must not only be proved to be *total* but also *permanent*. It is relatively easy to show that a disability is total, but the best of physicians will often be reluctant to advance an opinion as to whether or not some established total disabilities will be permanent. It is for this reason that most disability contracts provide for a contingency under which a total disability will be presumed to be permanent.

In considering the provisions applicable in the instant case it appears clear that, if the total disability is such that the insured desires to undertake the burden of proving actual permanency, he may do so within the first ninety days following the onset of total disability and in that event the benefits will accrue from the commencement of total disability. However, if he does not submit proof of actual permanency during the ninety day period following the commencement of total disability, then the disability will be *presumed* to be permanent. In this event, upon due proof of total disability for a period of ninety days duration, the insured is entitled to benefits beginning at the expiration of said ninety day period except for the specific limitation that benefits shall not accrue "from a date more than six months prior to the date that due proof of such disability is received by the company at its Home Office."

Defendant argues that the six months limitation provision has no application where, as here, proof is made of permanent disability in fact, as distinguished from presumptive permanency. With this we do not agree. It appears to be plainly stated that no benefit shall accrue prior to the expiration of the ninety day period unless, *during that period,* due proof is made that the total disability will be permanent. Defendant cannot avail himself of any advantage by having proved permanent total disability in fact, because the proof was not made during the ninety day period. Where proof is made thereafter, as in this case, the provision for furnishing the company with due proof that the total disability will be permanent, thus entitling the insured to benefits from the commencement of disability, has no application. Where, as here, due proof is not made until after the expiration of the ninety day period, the application of the presumptive permanency provision becomes automatic and exclusive, carrying with it the limitation on benefits to the effect that such "shall accrue from the expiration of said ninety days, but not from a date more than six months prior to the

date that due proof of such disability is received by the Company at its Home Office."

We have indicated our view that the meaning of the disability contract in this case is clear. Therefore, we can see no reason why it should not be enforced according to its terms. It is reasonable and proper that contracts of this nature have provisions requiring prompt proof of claims as a condition precedent to the right to receive benefits. The defendant is correct in his assertion that the policy contains no limitation upon the time in which a claim must be filed. This does not aid him, however, as it does have the provision we have already discussed which limits the accrual of benefits retroactively to not more than six months prior to the submission of proof.

The practical reasons for the retroactive limitation on benefits are obvious. The statute of limitations applicable to written contracts permits the filing of a suit within 10 years. Section 516.110 RSMo 1949, V.A. M.S. Actually, there is authority to the effect that the statute does not commence to run in this type of case until due proof of disability is made. If defendant's contention is correct, then a policyholder could collect disability benefits for a period of many years before the filing of his proof with the insurance company. Where such a long time has elapsed since the onset of the claimed disability, it would be extremely difficult for an insurer to make a satisfactory investigation of the claim. It is also apparent that in such a situation, insurance companies would never be able to place any reasonable estimate upon the extent of their liabilities.

These practical aspects relating to the problem before us have very little, if anything, to do with the interpretation a court would place upon the various provisions that make up a disability policy. Mention is made of them simply to point out that these limitation provisions are not placed in the policy for the sole purpose of defeating or diminishing the claims of the policyholder who does not make a prompt claim. They appear to be necessary for the sound,

orderly and economical operation of an insurance business of that nature.

What we have heretofore said will indicate our view that the defendant was not entitled to recover disability benefits upon any of the policies. The benefits claimed on the four policies that had matured were for a period that had expired more than six months before proof was submitted to plaintiff. The waiver of premium benefit on the other policy accrued only from the date the proof was received by the company and its first application was to the premium due May 11, 1951. As previously stated, plaintiff has twice tendered a return of this premium to defendant.

We think that the conclusion we have reached is logically sound and is in accord with the plain provisions of the policies. Actually, our decision upon this point does not require a judicial construction of the applicable provisions as there is no ambiguity. We need only to consider and restate herein the provisions as they appear in the contract. Many cases decided by the courts of Missouri and other states support our view. We deem it impractical to extend this opinion by a review and discussion of these cases, but we cite some of them herein for reference by those interested. State Mutual Life Assur. Co. v. Dischinger, Mo. Sup., 263 S.W.2d 394; Grafe v. Fidelity Mutual Life Ins. Co., Mo.App., 84 S.W.2d 400; Feinberg v. New York Life Ins. Co., 233 Mo.App. 707, 127 S.W.2d 82; Rowan v. New York Life Ins. Co., Mo.App., 124 S.W. 2d 577; Anderson v. Metropolitan Life Ins. Co., Mo.App., 96 S.W.2d 631; Moss v. Metropolitan Life Ins. Co., 230 Mo.App. 70, 84 S.W.2d 395; Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416; Berke v. New York Life Ins. Co., 208 Minn. 210, 293 N.W. 248; Davis v. Aetna Life Ins. Co., 128 Neb. 154, 258 N.W. 58; McGuinness v. New York Life Ins. Co., 254 Wis. 475, 36 N.W.2d 675; Ferguson v. Penn Mutual Life Ins. Co., 305 Ill.App. 537, 27 N.E.2d 548; Equitable Life Assur. Soc. v. Mercantile Commerce Bank & Trust Co., 8 Cir., 143 F.2d 397; Clarke v. Equitable Life Assur. Soc., 100 Colo. 490, 68 P.2d 541; Western & Southern Life Ins. Co. v. Robertson, 255 Ky. 13, 72 S.W.2d 718; Magill v. Travelers Ins. Co., 8 Cir., 133 F.2d 709; Fauer v. Aetna Life Ins. Co., 2 Cir., 70 F.2d 693; Aetna Life Ins. Co. v. Davis, 187 Ark. 398, 60 S.W.2d 912; Aetna Life Ins. Co. v. Roberts, 174 Miss. 278, 164 So. 311; Aetna Life Ins. Co. v. Moyer, 3 Cir., 113 F.2d 974.

It should be noted that the last four cases cited involve disability provisions almost identical with those in the case at bar. In each instance, the provision limiting retroactive benefits to six months prior to receipt of proof was stated to be free from ambiguity and enforcible as a valid limitation upon recovery of benefits.

The conclusion we have reached applies to the waiver of premiums as well as disability income benefits. There can be no difference. The policies require that proof be furnished to the insurer as a condition precedent before defendant is entitled to either type of benefit. He voluntarily paid the premiums. Not having furnished proof of disability, defendant legally owed the premiums. Had he not paid them the policies would have lapsed.

Defendant contends that, in any event, he can recover the premiums paid since the onset of disability. He argues that this is true because the payments were made under the influence of a mistake of fact, citing such cases as Bertig Mercantile Co. v. Williams, Mo.App., 286 S.W. 150; Roush v. Hussey Lumber Co., Mo.App., 27 S.W.2d 1033, and Koontz v. Central National Bank, 51 Mo. 275. These cases are not applicable. The situation in the instant case is much different than where one inadvertently pays the debt of another or carelessly pays an account twice or pays more than is due on a note under the mistaken impression he owes it. In the case at bar, no cause of action accrued until defendant made his proof. While he did not assert rights that may have been available to him under the policy, it cannot be said that he was paying premiums he did not owe under the mistaken im-

pression that he owed the same. Shank v. Jefferson Standard Life Ins. Co., 128 W.Va. 435, 36 S.E.2d 897.. To hold that defendant could recover premiums paid under these circumstances would squarely conflict with and nullify policy provisions which we have held are clear, explicit and enforcible.

In support of his claim that disability benefits commenced with the date of total and permanent disability, regardless of the time when proof of loss was made, defendant relies principally upon the case of Taylor v. Aetna Life Ins. Co., 236 Mo.App. 435, 154 S.W.2d 421. In this case, the policy provisions appear to have been identical with those before us and the administratrix of the insured's estate was permitted to recover premiums paid over a period of years before the death of insured upon a showing of total permanent disability, even though proof was not furnished until after insured's death. In affirming the judgment, the court of appeals seemed to conclude that there was some ambiguity in regard to the application of the presumptive permanency and six months limitation provision where the evidence showed actual permanent disability, as distinguished from presumptive permanent disability, and concluded that it should adopt the construction that would further the purpose for which the policy was procured, that is, protection against disability.

While the reasoning of the court in the Taylor case is not clear, the decision is contrary to the conclusion we have reached in the instant case. The Taylor case stands alone among the decisions of the courts of this state construing this type of disability provision. It is not in harmony with the other decisions of this state, conflicts with the weight of authority generally, and should no longer be considered authoritative.

Defendant also seeks to support his position by citing the cases of Hablutzel v. Home Life Ins. Co. of New York, Mo.App., 52 S.W.2d 480, affirmed 332 Mo. 920, 59 S.W.2d 639; Stahl v. American Nat. Assur. Co., Mo.App., 70 S.W.2d 78, and Minnesota Mutual Life Ins. Co. v. Marshall, 8 Cir., 29 F.2d 977. Each of these cases may be distinguished from the instant case because of differences in the disability provisions. The provision in those cases was, in effect, that upon being furnished proof of permanent disability, the company would waive the payment of premiums thereafter becoming due. Those cases simply hold that the phrase "thereafter becoming due" referred back to the onset of disability and not to the furnishing of proof. In view of the difference in policy provisions, there is no conflict between these cases and our instant decision. The Supreme Court of the United States made the same distinction in the case of Bergholm v. Peoria Life Ins. Co., supra.

Defendant has briefed the point that he was entitled to penalties and a reasonable attorney fee for vexatious refusal to pay. However, since we have held that he was not entitled to recover any judgment upon the policies, we need not consider that contention.

The cause is reversed and remanded with directions to set aside the judgment and to enter a declaratory judgment for plaintiff upon its petition in accordance with the views herein expressed and to further enter judgment for plaintiff upon the first, second, third and fifth counts of defendant's cross-petition. Upon the fourth count of the cross-petition, a judgment should be rendered for defendant in the sum of $760.80 (the amount of the premium paid on May 11, 1951), without interest. It is so ordered.

All concur.